In the Matter of BUFFALO POLICE BENEVOLENT ASSOCIA-
TION, Respondent-Appellant, v CITY OF BUFFALO, Ap-
pellant-Respondent.

Fourth Department, September 24, 1981

**APPEARANCES OF COUNSEL**

*Joseph P. McNamara, Corporation Counsel (William Carey* of counsel), for appellant-respondent.

*Nicholas Sargent* for respondent-appellant.

**OPINION OF THE COURT**

MOULE, J.

The questions presented on this appeal are whether a compulsory public interest arbitration award should be vacated and, if vacated, whether it must necessarily be submitted to a new panel of arbitrators.

In November of 1979 negotiations were begun between the City of Buffalo (City) and the Buffalo Police Benevolent Association (PBA) for a new collective bargaining agreement beginning July 1, 1980. When negotiations reach an impasse on 12 proposals submitted by the City and 15 proposals submitted by the PBA, the New York State Public Employment Relations Board was petitioned, pursuant to section 209 (subd 4, par [c]) of the Civil Service Law, to refer the dispute to compulsory public interest arbitration. A three-person public arbitration panel was selected: Richard Planavsky, appointed by the City; Nicholas J. Sargent, appointed by the PBA; and Dr. John E. Drotning, the chairman and public member appointed by both the City and the PBA.

Hearings were conducted by the arbitration panel on May 28, June 19, 20 and 30, 1980. In addition to taking testimony and receiving exhibits, the arbitrators discussed ways and means to reach an agreement. On June 30, 1980 a "Memorandum of Understanding" was signed by the three panel members which contained, in broad terms, the recommendations eventually stated in the formal arbitration award. Later the same day the signed memorandum of understanding was repudiated by Nicholas Sargent; he subsequently contended the memorandum was merely a promise to submit the contents to the PBA leadership for consideration.

The arbitration panel rendered its award September 12, 1980. Dr. Drotning and Mr. Planavsky constituted the majority on all judgments and recommendations; Nicholas Sargent dissented in a separate opinion rendered September 15, 1980.

The arbitration award specifically granted patrolmen a 7.7% increase in base salary in 1980, and a 6.8% increase in base salary in 1981. In arriving at the salary award, the panel stated it relied on the required statutory considerations of comparison of wages, hours and conditions of employment of similar employees, public welfare and ability of the public employer to pay, peculiarity of the profession and the terms of past agreements (Civil Service Law, § 209, subd 4, par [c], cl [v], subcls a-d).

In dealing with comparability, the panel found that a Buffalo police officer's salary is 8% less than that paid in West Seneca, 10% less than that paid in Amherst, similar to that paid in Tonawanda City, 8% less than that paid in the Town of Tonawanda, and "well below" that paid in Rochester and Syracuse; that Buffalo police receive reporting time and have a longevity schedule "roughly equivalent to that of police officers in geographically proximate areas"; and that "the [salary] difference should not be allowed to increase and the gap narrowed to some extent". In considering the City's ability to pay, the panel determined that the complexity of budgeting made it difficult to assess accurately the City's ability to pay, although the PBA "raised questions about the possible re-allocation of funds"; that the City has "leeway to levy more taxes and to contract more debt", although this is burdensome to homeowners; that the PBA's arguments on ability to pay "are somewhat more persuasive" than the City's contrary claim, "but the ability to pay criterion is one that cannot be measured precisely"; and that, in conclusion, the adjustment necessary to correct the relatively low salary of Buffalo police would "bankrupt" the City. In comparing the peculiarities of the profession, the panel determined that the inherent dangers of police work distinguish it from other bargaining units, with "the ever increasing crime statistics" lending "some credence to this argument". Finally, as to the terms of previous contracts, it was stated that "the constraints of Section 209.4 (v) (d) were also incorporated into the Panel's Award".

The arbitration award also made determinations on 20 other demands. These decisions were presented in the form of a list with each demand followed by the majority's decision on it; this list was preceded by the statement that "[t]he rest of the Panel recommendations will be made without discussion, but all economic issues were considered in light of each parties' arguments".

On September 16, 1980 the PBA petitioned for an order vacating the arbitration award pursuant to CPLR 7511. It alleged that the award failed to specify the basis for the majority's findings as required by section 209 (subd 4, par [c], cl [v]) of the Civil Service Law, and that the award

lacked a rational basis. The City cross-moved on September 18, 1980 for an order confirming the award.

By order entered October 3, 1980 the Supreme Court, Erie County, granted the PBA's motion and denied the City's motion, ordering that the award be vacated and the matter remanded to the arbitration panel for reconsideration and restatement of its determination. In its decision the court held that, although the award had a rational basis, it must be vacated for the failure of the arbitration panel to specify the basis for its findings (Civil Service Law, § 209, subd 4, par [c], cl [v]). The City appeals from the order vacating the arbitration award; the PBA cross-appeals from only that part of the order which remanded the matter to the original arbitration panel.

The first question on appeal is whether the arbitration panel, in arriving at its determination, set forth the basis for its findings with the requisite specificity.

A public arbitration panel, convened according to subdivision 4 of section 209 of the Civil Service Law, shall specify the basis for its findings in making a determination of the matters in dispute (Civil Service Law, § 209, subd 4, par [c], cl [v]). The panel must specifically exhibit that it took into consideration, in addition to other relevant factors, a comparison of the wages, hours, and conditions of employment of the employees involved in the arbitration with other employees, the public welfare and ability of the public employer to pay, a comparison of peculiarities in regard to other employment, and the terms of past collective agreements (*City of Yonkers v Mutual Aid Assn. of Paid Fire Dept. of City of Yonkers, Local 628, Int. Assn. of Fire Fighters, AFL-CIO,* 80 AD2d 597; Civil Service Law, § 209, subd 4, par [c], cl [v]). The specificity requirement is intended to tighten the procedures in compulsory arbitration; to facilitate meaningful judicial review of arbitration determinations and to insure that an arbitrator's work was rational and not arbitrary or capricious (NY Legis Ann, 1977, p 129).

█ The arbitration panel was not sufficiently explicit in its determination of the base salary increase for patrolmen. While a salary comparison was made between police in

Buffalo and those in other areas, this comparison did not extend to take into consideration conditions of employment among the police forces and made no comparison with any general public employees. The public welfare is mentioned only as a notation that increased taxes would present a burden to homeowners; on the complex issue of the City's ability to pay the arbitrators commented on the persuasiveness of the arguments and the difficulty of making a decision, but presented no factual demonstration for its conclusion that the higher salaries requested by the PBA would bankrupt the City while the awarded increase would not. Also, there is no indication that any evidence concerning the peculiarities of the profession was given or considered, and no indication of what prior collective agreements were considered.

Furthermore, the arbitration panel did not satisfy the required specificity in the determination of the 20 contract demands. Where only a conclusion is stated, the preamble that "all economic issues were considered" fails to meet the explicit statutory requirement of a specific basis for findings.

■■ Accordingly, the arbitration award should be vacated. The City's contention that the PBA is estopped from challenging the award, because it supposedly consented to the award when its arbitrator signed the memorandum of understanding, is without merit. Since an arbitrator, although appointed by a party, is not an agent of that party while serving on an arbitration panel (*Matter of American Eagle Fire Ins. Co. v New Jersey Ins. Co.*, 240 NY 398), a party is not estopped from taking a position contrary to that of the arbitrator (cf. *Matter of Bethlehem Steel Corp. v Fennie*, 55 AD2d 1007). By vacating the award, we make no determination on whether it has a rational basis, for no such judgment can be made on such unspecific findings.

The second question presented on appeal is whether the matter should be remanded to a new panel of arbitrators.

■ No error was committed by the remanding of the matter to the original panel of arbitrators. Upon the granting of a motion to vacate, the court may order a rehearing and determination either before the same arbitrator or

before a new arbitrator (CPLR 7511, subd [d]). There has been no showing that the arbitrators are no longer disinterested or impartial; therefore, remanding to the original panel is an appropriate decision, does not constitute an abuse of discretion, and will save the time and expense of submitting the matter to a new panel.

Accordingly, the order should be modified to remand the matter to the arbitration panel so that it may specify the bases for its findings.

DILLON, P.J., SIMONS, CALLAHAN and DENMAN, JJ., concur.

Order unanimously modified, and as modified affirmed, without costs, in accordance with opinion by MOULE, J.