[850 NYS2d 744]

In the Matter of the Arbitration between Buffalo Professional Firefighters Association, Inc., Local 282, IAFF, AFL-CIO-CLC, Respondent, and Anthony Masiello, as Mayor of City of Buffalo, et al., Appellants.

Fourth Department, February 1, 2008

**APPEARANCES OF COUNSEL**

*Hodgson Russ LLP*, Buffalo (*Jeffrey F. Swiatek* of counsel), for respondents-appellants.

*Law Offices of J. Gregory Hoelscher*, Buffalo (*J. Gregory Hoelscher* of counsel), and *Sammarco, Mattacola & Sammarco, LLP*, for petitioner-respondent.

**OPINION OF THE COURT**

LUNN, J.

In this appeal we are asked to decide whether Supreme Court properly vacated a compulsory public interest arbitration award on the ground that the arbitration panel, in making its award, exceeded its authority by failing to set forth the basis for its findings with the requisite specificity.

The collective bargaining agreement between petitioner, the union representing City of Buffalo firefighters, and the City of Buffalo (respondent) expired on June 30, 2002. Despite the efforts of the parties to negotiate a new collective bargaining agreement, several issues remained unresolved, resulting in the filing of a joint declaration of impasse on September 30, 2003. Mediation did not result in a new collective bargaining agreement, however, and petitioner thus sought compulsory public interest arbitration pursuant to Civil Service Law § 209 (4) (c), resulting in the selection of a three-member arbitration panel pursuant to that statute.

Hearings were held over a six-day period in November 2004 and January 2005, during which both petitioner and respondent called witnesses and made presentations in support of their respective positions. Additionally, the Buffalo Fiscal Stability Authority (BFSA), which had been established pursuant to the New York Public Authorities Law to oversee respondent's fiscal activities and to balance respondent's budget, also presented evidence during the course of the arbitration hearings. The most contentious issue concerned wage increases. Petitioner sought

wage increases of 3.4% for each of the two years that were the subject of the compulsory arbitration as well as a retroactive increase of $5,000 in base wages or salaries, effective July 1, 2002. Respondent, supported by the BFSA, proposed no increase to base wages or salaries for the two years that were the subject of the compulsory arbitration.

On July 18, 2005, the arbitration panel issued its award. The award was signed by the chairperson and the arbitrator representing respondent, who also issued a concurring opinion. The arbitrator representing petitioner issued a dissenting opinion. The award granted petitioner's members a general wage increase of 2.1% in the first year and 3.4% in the second year, but did not award the retroactive $5,000 increase in base wages or salaries. In arriving at its award, the panel majority noted that the evidence presented by the parties

> "was considered against the criteria set forth in [section 209 (4)] of the Civil Service Law, including, but not limited to a comparison of wages, hours and conditions of employment, of other employees performing similar services or requiring similar skills under similar working conditions; the interest and welfare of the public and the financial ability of the public employer to pay; the peculiarities in regard to other professions such as hazards, educational qualifications, training and skills; and the terms of collective agreements negotiated between the parties in the past providing for compensation and fringe benefits" (*see* § 209 [4] [c] [v] [a]-[d]).

With respect to petitioner's wage increase proposal, the panel majority found three of the statutory factors, namely, parity with the police, respondent's ability to pay, and the nature of the duties undertaken by firefighters, to be "key components" of its analysis. Specifically, with respect to parity and ability to pay, the panel majority determined that, in light of respondent's fiscal condition, "an essential question in this proceeding is whether there should be a deviation from the long historical practice of parity." The panel majority detailed the record evidence before it, which resulted in the structural imbalance between respondent's revenues and expenditures and created an "unprecedented" fiscal crisis that in turn led to the State Legislature's passage of the Buffalo Fiscal Stability Authority Act. Citing the "genuine limitation" of respondent with respect to its ability to pay that was not in existence when the previous

interest arbitration awards were issued, the panel majority was "constrained to break the pattern of parity to some extent." In arriving at its conclusion, the panel majority noted "the professionalism required of members of the Union and the extremely dangerous work they face each day," and the panel majority further noted that "[t]he public depends as much on the Union members as it does on their counterparts in the [Police Benevolent Association] for protection of life, limb and property." Finally, the panel majority also determined that "strict parity cannot be followed" here because the wage increases achieved by the police union occurred as a result of that union's other substantial concessions to respondent, which concessions were not offered by petitioner.

The only other award relevant to this appeal concerns health insurance. The panel majority prefaced its health insurance award with the observation that respondent "agreed to withdraw its health insurance proposal (City Proposal #3) based on its understanding that it had reached an agreement with [petitioner] on June 6, 2004, regarding health insurance." On that date, respondent and petitioner's president signed a memorandum of agreement allowing respondent to move to a single health insurance carrier whose premiums were based on an experience-rated plan for all of its employees, with the exception of members of the police union. The panel majority noted, however, that petitioner subsequently challenged the validity of the memorandum of agreement on the ground that it was not ratified by its membership. Further, the panel majority recognized that three grievances had been filed by petitioner over changes to the health insurance plans and that both parties had filed charges with the New York State Public Employment Relations Board that were still pending at the time of the award. Despite the ongoing dispute over the validity of the health insurance agreement, the panel majority believed "it appropriate to put the health insurance issue to rest for the parties." The panel majority therefore determined that health insurance would be provided by respondent to petitioner's members under the terms of the June 6, 2004 memorandum of agreement, citing "the cost savings realized by [respondent] in a movement to a single carrier," as well as evidence that petitioner's membership would receive the same level of health insurance benefits that was in place before the agreement was executed.

On October 5, 2005, petitioner commenced this proceeding pursuant to CPLR 7511 seeking to vacate the arbitration award

on the grounds that the panel majority failed to provide a specific basis for its findings and thereby exceeded its authority. The court granted the petition and vacated the award. Resolution of the issue of remittal to an appropriate arbitration panel was to be considered by the court at a future date. In vacating the award, the court found that the arbitration panel did not follow the requirements of Civil Service Law § 209 (4) (c) (v) because it focused on only three "considerations," gave "scant discussion" to certain statutory factors, and failed to address the statutory factors in their entirety. We conclude that the court erred in vacating the arbitration panel's award with respect to wage increases and that the order therefore should be modified accordingly.

Civil Service Law § 209 (4) (c) (v) provides in relevant part that, in determining the matters in dispute, a compulsory public interest arbitration panel "shall specify the basis for its findings," taking into consideration four factors that are then set out in detail, in addition to any other relevant factors. The four factors are as follows: a comparison of the wages, hours, and conditions of employment of the employees involved in the arbitration proceeding with those of other employees performing similar services and other employees generally in comparable communities; the public welfare and the ability of the public employer to pay; a comparison of peculiarities of the employment at issue with other employment, including hazards of employment, physical qualifications, educational qualifications, mental qualifications, and job training and skills; and the terms of past collective bargaining agreements (*see* § 209 [4] [c] [v] [a]-[d]). The Second Department has interpreted the statute as requiring an arbitration panel to discuss separately each of the statutory factors for each of its awards in order to avoid vacatur of the award (*see City of Yonkers v Mutual Aid Assn. of Paid Fire Dept. of City of Yonkers, Local 628, Intl. Assn. of Fire Fighters, AFL-CIO*, 80 AD2d 597 [1981]). We cannot agree with that interpretation, nor do we continue to adhere to our decision in *Matter of Buffalo Police Benevolent Assn. v City of Buffalo* (82 AD2d 635 [1981]) to the extent that it may be deemed to endorse that interpretation.

The specificity requirement in the decision of the Second Department and, as noted, to some extent this Department's decision in *Buffalo Police Benevolent Assn.*, was largely derived from the Governor's Approval Memorandum to the 1977 amendment to the statute. The 1977 amendment deleted an arbitra-

tion panel's consideration of the statutory factors only "so far as it deems them applicable" and substituted the requirement that the panel shall "specify the basis for its findings" after taking into consideration the four statutory factors (L 1977, ch 216, § 1, amending Civil Service Law § 209 [4] [c] [v]). The Governor's Approval Memorandum stated that the amendment was intended "to make it clear that arbitrators must make findings with respect to each statutory criterion which the parties put in issue, that each such finding must have an evidentiary basis in the record, and that the arbitrators must specify in their final determination what weight was given to each finding and why" (Governor's Mem approving L 1977, ch 216, 1977 NY Legis Ann, at 129). The Court of Appeals, however, has since made it clear that such statements of legislative intent must be viewed with caution because they "suffer from the same infirmities as those made during floor debates by legislators" (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 586 [1998]). As noted by the Court in *Majewski*, statements of legislators in floor debates are not helpful to courts in ascertaining legislative intent, and statements contained in a governor's memorandum are "[o]n the same footing" (*id.*).

Where the language of a statute is clear and unambiguous, the court must discern the legislative intent from the language of the statute, and the court "should construe [the statute] so as to give effect to the plain meaning of the words used" (*Matter of Orens v Novello*, 99 NY2d 180, 185 [2002] [internal quotation marks omitted]). In this case, the language of the statute is clear and unambiguous and plainly does not require discussion of each of the statutory factors or those factors put in issue by the parties. The statute simply requires, as it expressly states, that the panel consider the statutory factors and "specify the basis for its findings" (Civil Service Law § 209 [4] [c] [v]). Certainly, the Legislature could have chosen language that would require public arbitration panels to make express findings with respect to each of the statutory factors, or even each factor put in issue by the parties, but it did not. Thus, the Legislature has not required arbitration panels to engage in unnecessary discussion in their awards of factors not raised by the parties or thought to be relevant by either the parties or the panel. Judicial review of public arbitration awards otherwise would devolve into mere mechanical checklists, despite the fact that an award may appear on its face to be reasonable and to have a rational basis.

Reviewing the arbitration award at issue with respect to wage increases, we conclude that the record establishes that the panel majority properly considered all of the statutory factors and set forth, with the requisite specificity, the basis for its findings in making its award (*see Matter of Prue [City of Syracuse—Di-Paulo]*, 201 AD2d 894 [1994]; *see also Matter of Suffolk County v Suffolk County Patrolmen's Benevolent Assn.*, 70 AD2d 938 [1979]). The panel majority expressly stated more than once that it considered the evidence in light of the four statutory factors, and it quoted those required factors from the statute. The panel majority then set forth the basis for its finding with respect to wage increases by identifying the factors it considered to be most important in making its wage award and the evidentiary basis in the record for the weight ultimately given to these factors. Further, the factors on which the panel majority focused were those factors emphasized by the parties as being most important to the dispute. In sum, the panel majority did not exceed its authority or imperfectly execute it with respect to its wage increase award.

We conclude, however, that the court properly granted that part of the petition seeking to vacate the award with respect to health insurance benefits. Civil Service Law § 209 (4) (c) (v) provides in relevant part that "the public arbitration panel shall make a just and reasonable determination *of the matters in dispute*" (emphasis added). Prior to the arbitration hearing, petitioner's president and respondent entered into a memorandum of agreement relative to health insurance benefits providing that respondent "shall pull (and not replace) its Contract Proposal No. 3 . . . upon the execution of this agreement." Respondent's Proposal No. 3 was its health insurance proposal. Thereafter, a dispute arose between the parties over the validity of the agreement, which dispute was acknowledged by the arbitration panel to be still pending. Consequently, absent some evidence either that petitioner prevailed in its argument that the agreement was invalid or that it consented to have the panel decide that issue, health insurance benefits were not at the time the panel made its award a "matter[ ] in dispute," and the issue was not properly before it.

Accordingly, we conclude that the order should be modified by denying the petition in part and confirming the arbitration award with respect to wage increases.

GORSKI, J. (dissenting). We concur with the majority that the

arbitration panel majority erred in addressing the issue of health insurance benefits inasmuch as that issue was not a matter in dispute at the time that the panel majority made its award. However, we cannot agree with the majority that the panel majority's award complied with the requirements of Civil Service Law § 209 (4) (c) (v) with respect to the issue of wage increases.

As the majority correctly notes, Civil Service Law § 209 (4) (c) (v), the statute at issue herein, is clear and unambiguous. It provides that

> "the public arbitration panel shall make a just and reasonable determination *of the matters in dispute.* In arriving at such determination, the panel *shall specify the basis for its findings, taking into consideration, in addition to any other relevant factors, the following:*

> "a. comparison of the wages, hours and conditions of employment of the employees involved in the arbitration proceeding with the wages, hours, and conditions of employment of other employees performing similar services or requiring similar skills under similar working conditions and with other employees generally in public and private employment in comparable communities.

> "b. the interests and welfare of the public and the financial ability of the public employer to pay;

> "c. comparison of peculiarities in regard to other trades or professions, including specifically, (1) hazards of employment; (2) physical qualifications; (3) educational qualifications; (4) mental qualifications; [and] (5) job training and skills;

> "d. the terms of collective agreements negotiated between the parties in the past providing for compensation and fringe benefits, including, but not limited to, the provisions for salary, insurance and retirement benefits, medical and hospitalization benefits, paid time off and job security" (emphasis added).

In our view, the plain language of the statute *requires* an arbitration panel to do more than merely parrot that language by reporting·in a conclusory fashion that it took into consideration the four enumerated factors. Indeed, the Legislature care-

fully crafted the language of the statute by stating that "the panel *shall* make a just and reasonable determination of the matters in dispute," thus rendering mandatory the arbitration panel's consideration of the four enumerated factors, and compliance with the statute is lacking in the absence of specific discussion of those factors (*see generally Matter of Losurdo v Asbestos Free*, 1 NY3d 258, 265 [2003]). We therefore are unable to discern the basis for the statement of the majority that the statute "plainly does not require discussion of each of the statutory factors or those factors put in issue by the parties."

The Legislature, with the approval of the Governor, enacted significant changes in the language of Civil Service Law § 209 shortly after the Court of Appeals decided *Caso v Coffey* (41 NY2d 153 [1976]) and *Matter of City of Buffalo v Rinaldo* (41 NY2d 764 [1977]), which essentially stood for the proposition that, if there was any rational basis for the panel's award, it could be sustained. The Governor's Approval Memorandum stated:

> "These changes impart to the Courts the wisdom of the Legislature that judicial review must be strengthened so that it operates as an effective safeguard against arbitral abuses. *This bill is intended to narrow the expansive authority accorded to arbitrators by the Court of Appeals in City of Buffalo v. Rinaldo and to make it clear that arbitrators must make findings with respect to each statutory criterion which the parties put in issue, that each such finding must have an evidentiary basis in the record, and that the arbitrators must specify in their final determination what weight was given to each finding and why*" (Governor's Mem approving L 1977, ch 216, 1977 NY Legis Ann, at 129 [emphasis added]).

In *Matter of Buffalo Police Benevolent Assn. v City of Buffalo* (82 AD2d 635, 638 [1981]), this Court held that, pursuant to the subject statute, an arbitration panel "must specifically exhibit that it took into consideration, in addition to other relevant factors," the factors set forth in Civil Service Law § 209 (4) (c) (v). Unlike the majority, we do not believe that the legal principles expressed in that decision should be disavowed. As we stated therein, citing to the legislative history of the statute, "[t]he specificity requirement is intended to tighten the procedures in compulsory arbitration, to facilitate meaningful judicial review

of arbitration determinations and to insure that an arbitrator's work was rational and not arbitrary or capricious" (*id.*). Moreover, in a proceeding pursuant to CPLR article 75, the courts have both the power and the duty to ensure that an arbitration panel has not acted in excess of the authority given by statute or "in disregard of the standard prescribed by the [L]egislature" (*Mount St. Mary's Hosp. of Niagara Falls v Catherwood*, 26 NY2d 493, 506 [1970], *rearg denied* 27 NY2d 737 [1970]). Compliance with the statutory mandate of specificity, therefore, is necessary to permit the prescribed degree of review by the courts and to encourage confidence in the arbitration procedure. We conclude that the failure of an arbitration panel to provide an adequate specification concerning the basis of its findings with respect to each of the factors enumerated in the statute requires vacatur of the award with respect to the issue of wage increases (*see City of Yonkers v Mutual Aid Assn. of Paid Fire Dept. of City of Yonkers, Local 628, Intl. Assn. of Fire Fighters, AFL-CIO*, 80 AD2d 597 [1981]).

We further disagree with the majority that specific discussion of the factors enumerated in the statute requires arbitration panels "to engage in unnecessary discussion," particularly where, as here, one of those factors is put in issue by a party. Here, petitioner specifically requested that the arbitration panel undertake a comparison of the firefighters' wages with the wages of Rochester firefighters, a statutory factor that mandates consideration, yet the panel majority failed to address that issue in its award. Indeed, the only issue discussed at any length by the panel majority was parity with the City of Buffalo police. There was scant discussion, except in conclusory fashion, of the peculiarities of the work of petitioner's members, pursuant to the statutory factor set forth in section 209 (4) (c) (v) (c). Thus, in our view, the award with respect to the issue of wage increases is not in compliance with the statute, and the record does not reflect, as the majority asserts, "that the panel majority properly considered *all* of the statutory factors and set forth, with the requisite specificity, the basis for its findings in making its award" (emphasis added). In our view, Supreme Court properly granted the petition with respect to the issue of wage increases based on the panel majority's failure to address fully, at a minimum, the four factors enumerated in Civil Service Law § 209 (4) (c) (v) and thus properly granted the petition in its entirety.

Accordingly, we would affirm the order.

SCUDDER, P.J., and PERADOTTO, J., concur with LUNN, J.; GORSKI and GREEN, JJ., dissent in part and vote to affirm in a separate opinion by GORSKI, J.

It is hereby ordered that the order so appealed from is modified on the law by denying the petition in part and confirming the arbitration award with respect to wage increases and as modified the order is affirmed without costs.