OPINION OF THE COURT
 

 Smith, J.
 

 This case requires this Court to examine whether certain amendments to the Workers’ Compensation Law should be construed as retroactively applicable to pending actions. We conclude that the Appellate Division properly held that the relevant provisions of the new legislation should not apply to actions pending on the effective date of the amendments. Rather, the provisions should be applied prospectively to actions filed postenactment. Thus, the order of the Appellate Division should be affirmed and the certified question should be answered in the negative.
 

 I
 

 As alleged in the complaint, plaintiff was employed by third-party defendant Adirondack Mechanical Corporation (AMC). On October 26, 1994, plaintiff was assigned by AMC to perform certain repair work at a school operated and maintained by de
 
 *582
 
 fendant Broadalbin-Perth Central School District. AMC had contracted with defendant for the completion of this work.
 

 While performing the assigned repair work on the school’s premises, plaintiff fell from an allegedly defective ladder which had been provided by defendant. Plaintiff commenced a lawsuit on December 20, 1995 against defendant to recover for his personal injuries based upon claimed violations of Labor Law §§ 200 and 240 (1). On January 29, 1996, defendant commenced a third-party action against AMC which alleged that AMC had negligently supervised and failed to protect its employee. Defendant further claimed that AMC owed defendant a duty of contribution and/or indemnification for damages plaintiff might recover.
 

 On July 12, 1996, new legislation, commonly referred to as the Omnibus Workers’ Compensation Reform Act of 1996, was passed which amended Workers’ Compensation Law § 11 to provide that:
 

 “[a]n employer shall not be liable for contribution or indemnity to any third person based upon liability for injuries sustained by an employee acting within the scope of his or her employment for such employer unless such third person proves through competent medical evidence that such employee has sustained a ‘grave injury’ ” (L 1996, ch 635, §2).
 

 However, the amendments did not affect the power of a third party to recover under express contractual obligations between the employer and the third party
 
 (id.).
 
 The legislation was signed into law by Governor Pataki on September 10, 1996 with the relevant portions of the Act designated to “take effect immediately.” Thereafter, on September 20, 1996, AMC filed a motion for summary judgment against the third-party complaint arguing that the action for contribution and/or indemnification was now barred by the recent enactment.
 
 [1]
 

 Finding that the legislation was to have retroactive application to pending actions, Supreme Court granted AMC’s summary judgment motion and dismissed the third-party complaint. In reversing and denying AMC’s motion, the Appellate Division concluded “that the clear legislative intent underlying sections 2 through 9 of the Omnibus Act was that those provi
 
 *583
 
 sions apply prospectively only” (231 AD2d 102, 111). That Court certified the following question to this Court: “Did this court err as a matter of law in reversing the order of the Supreme Court and denying the third-party defendant’s motion for summary judgment?” We answer that question in the negative, and affirm the Appellate Division order.
 

 II
 

 “It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature”
 
 (Patrolmen’s Benevolent Assn. v City of New York,
 
 41 NY2d 205, 208;
 
 see also, Longines-Wittnauer v Barnes & Reinecke,
 
 15 NY2d 443, 453). As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof. As we have stated:
 

 “In construing statutes, it is a well-established rule that resort must be had to the natural signification of the words employed, and if they have a definite meaning, which involves no absurdity or contradiction, there is no room for construction and courts have no right to add to or take away from that meaning”
 
 (Tompkins v Hunter,
 
 149 NY 117, 122-123;
 
 see also, Matter of Raritan Dev. Corp. v Silva,
 
 91 NY2d 98).
 

 Here, the Act says only that the subject provisions are to “take effect immediately” (L 1996, ch 635, § 90). However, the date that legislation is to take effect is a separate question from whether the statute should apply to claims and rights then in existence
 
 (see, Shielcrawt v Moffett,
 
 294 NY 180 [separately analyzing retroactive or prospective application of a statute enacted to “take effect immediately”]).
 

 While the fact that a statute is to take effect immediately “evinces a sense of urgency,” “the meaning of the phrase is equivocal” in an analysis of retroactivity
 
 (Becker v Huss Co.,
 
 43 NY2d 527, 541). In fact, we noted in
 
 Becker
 
 that “[identical language in other acts has not been enough to require application to pending litigation”
 
 (id.,
 
 at 541). Here, the significance of the effective date upon our analysis of the reach of the subject provisions is further obscured because the Legislature explicitly designated prospective or retroactive application for other provisions of the Act not at issue here (L 1996, ch 635, § 90). Under the circumstances, the proviso that the subject provisions were
 
 *584
 
 to “take effect immediately” contributes little to our understanding of whether retroactive application was intended on the issue presented.
 

 It is a fundamental canon of statutory construction that retroactive operation is not favored by courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it (see,
 
 Jacobus v Colgate,
 
 217 NY 235, 240 [Cardozo, J.] [“It takes a clear expression of the legislative purpose to justify a retroactive application”];
 
 Landgraf v USI Film Prods.,
 
 511 US 244, 265 [“the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic”]). An equally settled maxim is that “remedial” legislation or statutes governing procedural matters should be applied retroactively
 
 (see, Matter of OnBank & Trust Co.,
 
 90 NY2d 725, 730;
 
 Becker v Huss Co., supra,
 
 43 NY2d, at 540).
 

 However, such construction principles are merely navigational tools to discern legislative intent. Classifying a statute as “remedial” does not automatically overcome the strong presumption of prospectivity since the term may broadly encompass any attempt to “supply some defect or abridge some superfluity in the former law” (McKinney’s Cons Laws of NY, Book 1, Statutes § 321). As we have cautioned, “General principles may serve as guides in the search for the intention of the Legislature in a particular case but only where better guides are not available”
 
 (Shielcrawt v Moffett, supra,
 
 294 NY, at 189;
 
 see also, Matter of OnBank & Trust Co., supra,
 
 90 NY2d, at 730;
 
 Becker v Huss Co., supra,
 
 43 NY2d, at 540). To that end, we turn to legislative history to steer our analysis.
 

 It is clear that one of the key purposes of the Act was the legislative modification of
 
 Dole v Dow Chem. Co.
 
 (30 NY2d 143) insofar as that case related to third-party actions against employers. That intention was repeatedly expressed by all sides during the legislative debates and is included in the official statement of intent
 
 (see,
 
 L 1996, ch 635, § 1 [“It is the further intent of the legislature to create a system which protects injured workers and delivers wage replacement benefits in a fair, equitable and efficient manner, while reducing time-consuming bureaucratic delays, and repealing
 
 Dole
 
 liability except in cases of grave injury.”]). In
 
 Dole,
 
 this Court examined the share of losses to be apportioned between joint tortfeasors. Notwithstanding which tortfeasor was sued by an injured plaintiff, this Court concluded that the defendant, if found liable, could recover a proportionate share from a joint tortfea
 
 *585
 
 sor. As we stated, “where a third party is found to have been responsible for a part, but not all, of the negligence for which a defendant is cast in damages, the responsibility for that part is recoverable by the prime defendant against the third party”
 
 (Dole v Dow Chem. Co., supra,
 
 30 NY2d, at 148-149;
 
 see also, Raquel v Braun,
 
 90 NY2d 177, 182). Such equitable principles are codified in article 14 of the CPLR.
 

 In
 
 Dole,
 
 the plaintiff was the employee of the third-party defendant so no recovery could be had against the employer by the employee or “anyone otherwise entitled to recover damages *
 
 * *
 
 on account of such injury or death” under Workers’ Compensation Law § 11. Nevertheless, we extended our reasoning concerning the apportionment of liability to allow contribution or indemnification from an employer even though the employer could not have been liable directly to a plaintiff who had chosen to sue the joint tortfeasor. It was this part of the decision that proved most controversial.
 

 With the recent passage of the Act, the Legislature endeavored to clarify and restore
 

 “the force of ‘exclusive remedy’ (or ‘no fault’) provisions. Specifically, amendments would protect employers and their employees from other than contract-based suits for contribution or indemnity by third parties (such as equipment manufacturers which have been deemed liable for causing employees injuries or deaths) — in effect, repealing the doctrine of
 
 Dole”
 
 (Assembly Mem in Support, 1996 McKinney’s Session Laws of NY, at 2562).
 

 Memoranda issued contemporaneously with the passing and signing of the Act provided that “the exclusive remedy” would be “restored and reinforced”
 
 (id.,
 
 at 2565;
 
 see also,
 
 Governor’s Approval Mem, 1996 McKinney’s Session Laws of NY, at 1915). In an analysis of retroactive application, we have found it relevant when the legislative history reveals that the purpose of new legislation is to clarify what the law was always meant to say and do
 
 (see, Matter of OnBank & Trust Co., supra,
 
 90 NY2d, at 731). However, labeling the legislation as “remedial” in this regard is not dispositive in light of other indicators of legislative intent.
 

 For example, legislators made declarations during floor debates that conclusively state that the Act was not intended to be applied retroactively (231 AD2d, at 109). Moreover, a report entitled “New York State Assembly Majority Task Force
 
 *586
 
 on Workers’ Compensation Reform” explicitly states (at 25) that the provisions would apply only to “accidents that occur [after the effective] date forward,” and was “not intended to limit the rights of parties to a lawsuit filed after the law takes effect, but involving a claim arising from an accident that occurred before the law took effect.” Although these averments “may be accorded some weight in the absence of more definitive manifestations of legislative purpose”
 
 (Schultz v Harrison Radiator Div. Gen. Motors Corp.,
 
 90 NY2d 311, 318), such indicators of legislative intent must be cautiously used
 
 (see, Woollcott v Shubert,
 
 217 NY 212, 221 [“statements and opinions of legislators uttered in the debates are not competent aids to the court in ascertaining the meaning of statutes”]). As the Supreme Court has noted:
 

 “it is impossible to determine with certainty what construction was put upon an act by the members of a legislative body that passed it by resorting to the speeches of individual members thereof. Those who did not speak may not have agreed with those who did; and those who spoke might differ from each other”
 
 (United States v Freight Assn.,
 
 166 US 290, 318).
 

 On the same footing are statements contained in the Governor’s Memorandum issued with the signing of the Act. In it, the Governor states his view that the legislation was intended to be retroactive (1996 McKinney’s Session Laws of NY, at 1912 [“(o)f primary importance is the retroactive repeal” of
 
 Dole]).
 
 The Governor further stated that:
 

 “This new system, which takes effect immediately, is enacted with the specific intent of maximizing savings in workers’ compensation premiums through its application to all cases currently pending in the courts of our State wherein the primary action has neither been settled nor reduced to judgment”
 
 (id.,
 
 at 1913).
 

 Although postenactment statements of the Governor may be examined in an analysis of legislative intent and statutory purpose
 
 (see, e.g., Crane Neck Assn. v New York City / Long Is. County Servs. Group,
 
 61 NY2d 154 [relying upon gubernatorial memoranda];
 
 see also,
 
 Killenbeck, A
 
 Matter of Mere Approval? The Role of the President in the Creation of Legislative History,
 
 48 Ark L Rev 239), such statements suffer from the same infirmities as those made during floor debates by legislators.
 
 *587
 
 Here, the reports and memoranda simply indicate that various people had various views.
 
 [2]
 

 Importantly, we note that the initial draft of the Act expressly provided that it would apply to
 
 “lawsuit[s] [that have] neither been settled nor reduced to judgment”
 
 by the date of its enactment (231 AD2d, at 107). That language does not appear in the enacted version. A court may examine changes made in proposed legislation to determine intent
 
 (see, United States v St. Paul, Minneapolis & Manitoba Ry. Co.,
 
 247 US 310, 318;
 
 Woollcott v Shubert, supra,
 
 217 NY, at 221;
 
 People v Korkala,
 
 99 AD2d 161, 166 [“rejection of a specific statutory provision is a significant consideration when divining legislative intent”]). Here, such evidence is consistent with the strong presumption of prospective application in the absence of a clear statement concerning retroactivity.
 

 Appellant points to the general principle that legislation is to be interpreted so as to give effect to every provision. A construction that would render a provision superfluous is to be avoided
 
 (Matter of OnBank & Trust Co., supra,
 
 90 NY2d, at 731; McKinney’s Cons Laws of NY, Book 1, Statutes § 98 [a]). In this regard, appellant argues that sections 87 and 88 of the Act would be rendered meaningless if the provisions concerning third-party contribution claims were not applied retroactively. We disagree.
 

 Section 88 of the Act mandates an audit of all workers’ compensation insurance carriers and the State Insurance Fund to determine “the value as of December 31, 1996 of any reduction in reserves, hereinafter referred to as the reserve adjustment, required to be established for losses or claims pursuant to section 1303 of the insurance law and, concerning the state insurance fund, section 88 of the workers’ compensation law that result from the application” of the Act’s provisions related to
 
 Dole
 
 liability (L 1996, ch 635, § 88 [a]). Section 87 of the Act imposes a $98 million “special assessment” on all licensed workers’ compensation insurance carriers that is to be deposited in the general fund of the State (L 1996, ch 635, § 87). There is nothing in the law itself indicating the reason
 
 *588
 
 for the assessment or the intent behind these sections of the Act.
 

 Section 88 refers to “reserves * * * required to be established for losses or claims pursuant to section 1303 of the insurance law.” The referenced provision states that:
 

 “[e]very insurer shall * * * maintain reserves in an amount estimated in the aggregate to provide for the payment of all losses or claims incurred on or prior to the date of statement,
 
 whether reported or unreported,
 
 which are unpaid as of such date and for which such insurer may be liable, and also reserves in an amount estimated to provide for the expenses of adjustment or settlement of such losses or claims” (Insurance Law § 1303 [emphasis supplied]).
 

 Plainly, the statute requires insurers to set aside “reserves” for losses or claims that have been incurred but not reported to the company. Such reserves are calculated actuarially based upon a statistical analysis of the insurance company’s loss experience (se
 
 e, Matter of Stewart [Citizens Cas. Co.],
 
 23 NY2d 407, 414-415). Examined under the circumstances presented, workers’ compensation carriers are required to maintain reserves for (1) reported and expected
 
 Dole
 
 losses on pending actions; and (2) anticipated
 
 Dole
 
 losses on claims already incurred but not yet reported or asserted. If the new amendments were applied prospectively, the second category of
 
 Dole
 
 losses would, by and large, never materialize and the reserves set aside to cover such claims would be reduced.
 

 However, that “reduction” is mathematically related to monies already collected by carriers via the payment of premiums. The Legislature apparently decided that the State should receive such “reduction in reserves” rather than permit insurers to retain the monies. As noted in the “New York State Assembly Majority Task Force on Workers’ Compensation Reform” report (at 31):
 

 “As a result of the changes in employer liability enacted
 
 {Dole),
 
 carriers would be collecting more premium than actuarial [sic] needed. As a result, the legislation provides that this money be returned to the State.”
 

 While the elimination of pending
 
 Dole
 
 claims might lead to a maximum reduction in insurance reserves, there is some reduction in reserves even upon a prospective application of the
 
 *589
 
 legislation. Thus, sections 87 and 88 of the Act would not be rendered meaningless in the absence of retroactive application. Indeed, it is impossible to determine from the record provided how the Legislature actually derived $98 million as the amount of the “special assessment.” As for whether these accounting provisions necessitate the wholesale dismissal of pending
 
 Dole
 
 claims, we are reluctant to assume that the Legislature would choose such a vexing and circuitous means of conveying that intent".
 

 We further note our agreement with the statement made by the Appellate Division in
 
 Morales v Gross
 
 (230 AD2d 7) that the “purpose of the subject provisions was to abolish most third-party actions so as to enhance the exclusivity of the Workers’ Compensation Law, thereby reducing insurance premiums and decreasing the cost of doing business in New York”
 
 (id.,
 
 at 12). An extensive subject of discussion in the floor debates surrounding the subject legislation was how employers of New York have been forced to pay the highest insurance premiums in the country due, in part, to the possibility of third-party contribution/indemnification claims.
 

 Prospective application of the legislation would still accomplish the legislative purpose of reducing insurance premiums and workers’ compensation costs for employers and, in that way, assist “our State’s ability to attract and maintain businesses and jobs” (Governor’s Approval Mem, 1996 McKinney’s Session Laws of NY, at 1912). Current employers would presumably realize future savings through the elimination of
 
 Dole
 
 claims and the consequent reduction in insurance premiums.
 
 [3]
 
 Moreover, prospective application still enables the payment of substantial sums to the State by insurance companies who have, indirectly, benefitted from the reduction of reserves.
 

 That a statute is to be applied prospectively is strongly presumed and here, we find nothing that approaches any type of “clear” expression of legislative intent concerning retroactive application. Indeed, other than the Governor’s statements, the direct evidence concerning retroactivity is either against that view or equivocal. Moreover, the discernible legislative purpose does not mandate a particular result. “In the end, it is in
 
 *590
 
 considerations of good sense and justice that the solution must be found”
 
 (Matter of Berkovitz v Arbib & Houlberg,
 
 230 NY 261, 271 [Cardozo, J.]) in the specific circumstances of each case.
 

 We conclude that, irrespective of the date of the accident, a prospective application of the subject legislation to actions by employees for on-the-job injuries against third parties filed after the effective date of the relevant provisions is eminently consistent with the over-all and specific legislative goals behind passage of the Act.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the negative.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Levine, Ciparick and Wesley concur.
 

 Order affirmed, etc.
 

 [1]
 

 . Not at issue is whether the plaintiffs injuries qualify as “grave” within the meaning of the newly amended Workers’ Compensation Law § 11.
 

 [2]
 

 . Under the circumstances, little weight should be accorded to the post-passage opinions of the Department of Insurance and the Workers’ Compensation Board concerning the reach of the legislation (see, Mem of Workers’ Compensation Board, Susan Gravlich, Secretary, dated Aug. 8, 1996, Bill Jacket, L 1996, ch 635, at 2; Letter of Department of Insurance, Edward Muhl, Superintendent, dated Aug. 9, 1996, Bill Jacket, L 1996, ch 635, at 8).
 

 [3]
 

 . The Compensation Insurance Rating Board estimated that the change in employer liability will save employers approximately 3.2% in premium (see, Report of “New York State Assembly Majority Task Force on Workers’ Compensation Reform”, at 31).