■ In the Matter of TOWN OF CORTLANDT, Petitioner, v NEW YORK STATE BOARD OF REAL PROPERTY SERVICES, Respondent. [830 NYS2d 189]—

Proceeding pursuant to CPLR article 78, Real Property Tax Law § 1218, and 9 NYCRR subpart 186-2 *et seq.*, in the nature of mandamus to compel the New York State Board of Real Property Services, inter alia, to (1) deliver the recalculated final state equalization rate of 4.24% for the 1998 assessment roll of the Town of Cortlandt, established on April 29, 2003, to all relevant municipal agencies, (2) recalculate the 1998 special franchise assessments for the Town of Cortlandt pursuant to the recalculated final state equalization rate, and (3) annul and reestablish the 1998 special segment equalization rates for certain school districts located within the Town of Cortlandt.

Adjudged that the petition is granted, on the law, to the extent that the New York State Board of Real Property Services is directed to (1) deliver the 1998 final state equalization rate for the Town of Cortlandt, as recalculated on April 29, 2003, to all relevant municipal agencies, (2) recalculate the 1998 special franchise assessments for the Town of Cortlandt by application of the recalculated 1998 final state equalization rate, and (3) determine, pursuant to 9 NYCRR 186-3.10, whether any 1998 special segment equalization rates for the Town of Cortlandt should be rescinded and reestablished, and the petition is otherwise denied, with costs to the Town of Cortlandt.

In a prior proceeding (*see Matter of Town of Cortlandt v New York State Bd. of Real Prop. Servs.,* 288 AD2d 388), this Court annulled a determination of the New York State Board of Real Property Services (hereinafter the Board), which had established a final state equalization rate of 4.08% for the 1998 assessment roll of the Town of Cortlandt, and remitted the matter to the Board for a recalculation of the rate. Upon remittitur, the Board recalculated the rate to be 4.24%. The Town thereafter requested that the Board, inter alia, (1) recalculate the special franchise assessments in the Town for 1998 pursuant to the recalculated final state equalization rate, and (2) establish new 1998 special segment equalization rates for the relevant school districts in the Town. When the Board refused to do so, the Town commenced this proceeding to compel such action.

In opposition to the Town's petition, the Board argues, inter alia, that it fully complied with this Court's order entered in the prior proceeding by merely recalculating the final state equalization rate for 1998, and that it lacked the "statutory or regulatory power" to grant the relief demanded by the Town concerning the special franchise assessments and special segment equalization rates. Further, the Board asserts that although the Legislature amended Real Property Tax Law § 1218 to authorize the Board to grant such relief, the amendment did not become effective until after all relevant events in this proceeding had already occurred, and therefore was inapplicable. We disagree.

At the time this proceeding was commenced, Real Property Tax Law § 1218 provided: "A final determination of the state board relating to state equalization rates may be reviewed by commencing an action in the appellate division of the supreme court in the manner provided by article seventy-eight of the civil practice law and rules upon application of the county, city, town or village for which the rate or rates were established. The standard of review in such a proceeding shall be as specified in subdivision four of section seventy-eight hundred three of the civil practice law and rules."

Effective November 3, 2004, the statute was amended to add the following language: "Whenever a final order is issued in such a proceeding directing a revised state equalization rate, any county, village or school district that used the former rate in the apportionment of taxes must, upon receipt of such final order, recalculate the levy that used such former rate and credit or debit as appropriate its constituent municipalities in its next levy. Any special franchise assessments that were established using the former rate must, upon receipt of such final order, be revised by the state board in accordance with the new rate, and, if taxes have already been levied upon such assessments, the affected special franchise owners shall either automatically receive a refund if there is a decrease or be taxed on an increase in the next levy in the manner provided for omitted parcels in title three of article five of this chapter." (L 2004, ch 685 § 1.)

Concerning the retroactive application of statutes and amendments thereto, the Court of Appeals has stated: "It is a fundamental canon of statutory construction that retroactive operation is not favored by courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it . . . An equally settled maxim is that 'remedial' legislation or statutes governing procedural matters should be applied retroactively . . . However, such construction

principles are merely navigational tools to discern legislative intent. Classifying a statute as 'remedial' does not automatically overcome the strong presumption of prospectivity since the term may broadly encompass any attempt to 'supply some defect or abridge some superfluity in the former law' (McKinney's Cons Laws of NY, Book 1, Statutes § 321). As we have cautioned, 'General principles may serve as guides in the search for the intention of the Legislature in a particular case but only where better guides are not available.' " (*Majewski v Broadalbin-Perth Cent. School Dist.,* 91 NY2d 577, 584 [1998] [internal citations marks omitted]; *see also Matter of Gleason [Michael Vee, Ltd.],* 96 NY2d 117 [2001]). Thus, "[i]n an analysis of retroactive application, [the courts] have found it relevant when the legislative history reveals that the purpose of new legislation is to clarify what the law was always meant to say and do . . . However, labeling the legislation as 'remedial' in this regard is not dispositive in light of other indicators of legislative intent" (*Majewski v Broadalbin-Perth Cent. School Dist., supra* at 585; *see Matter of Gleason [Michael Vee, Ltd.], supra*). Legislation is remedial if it is "designed to correct imperfections in prior law" (*Matter of Asman v Ambach,* 64 NY2d 989, 990-991 [1985] [internal quotation marks omitted]; *see Matter of Gleason [Michael Vee, Ltd.], supra; Matter of Hynson [American Motors Sales Corp.—Chrysler Corp.],* 164 AD2d 41, 48 [1990]).

Here, the conclusion to be drawn from the face of the amendment—that it is remedial in nature—is supported by the legislative memorandum in support of the same, which indicates that the amendment was to clarify the law as to "what, if any, effect there is on nonparties when a State equalization rate is revised in [an article 78] proceeding" and to "serve as notice to all that the commencement of a proceeding to review a State equalization rate may result in the recalculation of apportionments and assessments calculated using the challenged rate" (Senate Introducer Mem in Support, Bill Jacket, L 2004, ch 685, at 4). The Board has not cited, and research has not revealed, any expressed legislative intent supporting the Board's interpretation. Thus, the amendment is entitled to retroactive application.

In any event, the position argued by the Board, i.e., that prior to amendment of Real Property Tax Law § 1218 it could be compelled to recalculate an equalization rate, but lacked the authority to implement the recalculated rate, is untenable. The amendment merely made manifest the authority already implied.

The parties' remaining contentions either are without merit

or need not be addressed in light of the foregoing. Spolzino, J.P., Ritter, Lunn and Angiolillo, JJ., concur.