08-1669-cv
Kuhne v. Cohen & Slamowitz, LLP

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2008

(Argued: May 19, 2009                                    Decided: August 27, 2009)

Docket No. 08-1669-cv

_____

PAUL KUHNE,

*Plaintiff-Appellant,*

—v.—

COHEN & SLAMOWITZ, LLP, MIDLAND FUNDING NCC-2 CORP.,

*Defendants-Appellees.*

_____

B e f o r e :

STRAUB, HALL, and LIVINGSTON, *Circuit Judges.*

_____

On appeal from a judgment of the United States District Court for the Southern District of New York (Harold Baer, Jr., *Judge*), granting summary judgment in favor of defendants and dismissing plaintiff's complaint in its entirety. Plaintiff Paul Kuhne alleges that defendant Midland Funding NCC-2 Corporation is a "debt collection agency" under New York City Administrative Code § 20-489(a) and is thus required under § 20-490 to be licensed by the New York City Department of Consumer Affairs in order to engage in debt collection activities in the City of New York. He alleges that because NCC-2 did not have such a license, defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and New York General

Business Law § 349 when defendant Cohen & Slamowitz, LLP filed a lawsuit against him on behalf of NCC-2 seeking to collect from him defaulted consumer debt that NCC-2 had purchased from his original creditor. The parties do not dispute that NCC-2 engages in the business of purchasing defaulted consumer debt and authorizes third party debt collection agencies to engage in debt collection activities to collect that debt, including the filing of lawsuits in NCC-2's name in the event that their initial efforts are unsuccessful. The issue is whether, under these circumstances, NCC-2 is a debt collection agency under N.Y.C. Admin. Code § 20-489(a). Because (1) the Appellate Divisions of New York State Supreme Court and the New York Court of Appeals have not addressed this question, (2) the lower courts are not in agreement on the issue, (3) the text of the statute fails to provide an unmistakable answer, and (4) a recent amendment of N.Y.C. Admin. Code § 20-489(a) complicates our determination of the legislative intent, we respectfully believe that the New York Court of Appeals should have the first opportunity to determine the issue. If the New York Court of Appeals answers this question in the affirmative, then we respectfully request that it also address whether defendants violated New York General Business Law § 349 by virtue of NCC-2's status as the named plaintiff in the debt collection suit against Kuhne.

---

BRIAN L. BROMBERG, Bromberg Law Office, P.C., New York, NY, for Plaintiff-Appellant.

THOMAS A. LEGHORN, Wilson, Elser, Moskowitz, Edelman & Dicker LLP (Jay A. Wechsler, *on the brief*), White Plains, NY, for Defendants-Appellees.

CAROLYN E. COFFEY, MFY Legal Services, Inc. (Andrew Goldberg, Anamaria Segura, *on the brief*; Jeanette Zelhof, *of counsel*), New York, NY for MFY Legal Services, Inc. *as* amicus curiae *in support of Plaintiff-Appellant*.

---

STRAUB, *Circuit Judge*:

Plaintiff Paul Kuhne appeals from a judgment of the United States District Court for the Southern District of New York (Harold Baer, Jr., *Judge*), entered on March 6, 2008, granting summary judgment in favor of defendants and dismissing Kuhne's complaint in its entirety.

Kuhne alleges that defendant Midland Funding NCC-2 Corp. ("NCC-2") is a "debt collection agency" under New York City Administrative Code ("N.Y.C. Admin. Code" or "Code") § 20-489(a) and is thus required under § 20-490 to be licensed by the New York City Department of

Consumer Affairs ("DCA") in order to engage in debt collection activities in the City of New York. He alleges that because NCC-2 did not have such a license, defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and New York General Business Law ("N.Y. GEN. BUS. LAW") § 349 when defendant Cohen & Slamowitz, LLP ("C&S") filed a lawsuit against him on behalf of NCC-2 seeking to collect from him defaulted consumer debt that NCC-2 had purchased from his original creditor.

Until recently, section 20-489(a) of the Code defined "debt collection agency" as "a person engaged in business the principal purpose of which is to regularly collect or attempt to collect debts owed or due or asserted to be owed or due to another." N.Y.C. Admin. Code § 20-489(a).[1] Section 20-490, in turn, makes it "unlawful for any person to act as a debt collection agency without first having obtained a license" from the DCA. *Id.* § 20-490. The parties do not dispute that NCC-2 engages in the business of purchasing defaulted consumer debt and authorizes third party debt collection agencies to engage in debt collection activities to collect that debt, including the filing of lawsuits in NCC-2's name in the event that their initial efforts are unsuccessful. The issue on appeal is whether, under these circumstances, NCC-2 is a debt collection agency under the pre-amendment version of N.Y.C. Admin. Code § 20-489(a).

The Appellate Divisions of New York State Supreme Court and the New York Court of Appeals have not addressed this question, and we do not believe the text of the statute provides

---

[1] While this appeal was pending, the City Council of the City of New York amended certain provisions of the N.Y.C. Admin. Code relating to debt collection, including section 20-489(a). Unless otherwise indicated, all citations to the Code refer to the version in effect at the time of the alleged wrongdoing.

an unmistakable answer. While the weight of the authority in New York appears to support defendants' position that NCC-2 is not a debt collection agency, Kuhne's position is not without support. Moreover, as noted, the City Council recently enacted legislation that amends N.Y.C. Admin. Code § 20-489(a), which became effective July 16, 2009, to unambiguously include entities such as NCC-2 within the definition of debt collection agency. *See* N.Y.C. Local Law No. 15 (2009) (Council Int. No. 660-A).[2] The legislative history of Local Law No. 15 states that it is a clarification of the law, thereby implying that the pre-amendment version of § 20-489(a) treats entities such as NCC-2 as debt collection agencies. Under these circumstances, we respectfully believe that the New York Court of Appeals should have the opportunity to determine whether the pre-amendment version of § 20-489(a) includes within its definition of "debt collection agency" entities such as NCC-2. If the New York Court of Appeals accepts this certification and answers this question in the affirmative, then we respectfully request that it also address whether defendants violated N.Y. GEN. BUS. LAW § 349 by virtue of NCC-2's status as the named plaintiff in the debt collection suit against Kuhne.

**BACKGROUND**

The following facts are undisputed. NCC-2 is a Delaware corporation and is indirectly owned by Encore Capital Group, Inc. ("Encore"), also a Delaware corporation. NCC-2 is in the business of purchasing defaulted debt. It has no employees and is not licensed as a debt collection agency by the DCA.

---

[2] Local Law No. 15 is available at
http://www.nyc.gov/html/dca/downloads/pdf/law09015.pdf.

NCC-2 is indirectly owned by and has a servicing agreement with Midland Credit Management, Inc. ("MCM") pursuant to which MCM engages in collection activities on behalf of NCC-2. MCM is also owned by Encore, but, unlike NCC-2, is duly licensed by the DCA as a debt collection agency. MCM initially attempts to collect a debt by contacting the debtor by telephone and letter, and, in the event that these efforts fail, it forwards the debt to a local, debt collection law firm for suit in the name of the debt owner.

Kuhne is an individual residing in New York County, New York. Sometime in the late 1990s, he defaulted on a Citibank/Associates credit card. Years later, Kuhne received a letter dated June 8, 2005 from MCM indicating that NCC-2 "recently purchased" his account and that MCM, "a debt collection company, is the servicer of this obligation."

NCC-2 never had contact with Kuhne; all contact with him was initially made by MCM. MCM sent Kuhne several letters attempting to collect the debt, the first of which was its June 8, 2005 letter mentioned above. It offered Kuhne a 50% discount off of his current balance if he sent payment to MCM by July 23, 2005. On August 4, 2005, MCM sent a second letter, this time offering Kuhne an interest free payment schedule. It sent similar letters on September 21, 2005, November 1, 2005 and January 6, 2006. MCM was unsuccessful in collecting the debt. Kuhne does not allege that defendants or MCM violated the FDCPA or N.Y. GEN. BUS. LAW § 349 by sending any of these letters.

MCM then retained C&S, a debt collection law firm in New York, to pursue collection activities against Kuhne on behalf of NCC-2. C&S is and has been at all relevant times licensed by the DCA as a debt collection agency. In June 2006, C&S filed suit on behalf of NCC-2 in the

Civil Court of the City of New York. NCC-2 was the only named plaintiff in this action. Shortly thereafter, C&S served Kuhne with the necessary summons. C&S also sent him several letters indicating, *inter alia*, that it was willing to settle the matter "without appearing in court." On February 20, 2007, NCC-2 and Kuhne stipulated to a discontinuance with prejudice.[3]

A few days after the discontinuance, on February 23, 2007, Kuhne commenced this action. He filed an amended complaint on May 15, 2007, alleging that NCC-2, "acting together with Encore and MCM, directed [C&S] to collect the alleged consumer debt by telephone and mail, and by filing litigation in the New York City Civil Courts." Am. Compl. ¶ 22. He further alleges that "[b]ecause [NCC-2] is not licensed as a debt collector by the [DCA], it is not permitted to bring suit" in the City of New York and that C&S "knew or should have known" this fact. *Id.* ¶¶ 39-40. Kuhne claims that defendants thereby violated the FDCPA and N.Y. GEN BUS. LAW § 349.[4] He alleges that, as a result of these violations, he "hired an attorney to defend

---

[3] The record does not reveal whether Kuhne and NCC-2 entered into a settlement agreement.

[4] Specifically, Kuhne alleges that defendants violated 15 U.S.C. § 1692e(5), (9) and (10) "by falsely, deceptively, and misleadingly representing that NCC-2 was authorized to collect debts by the DCA." Brief for Plaintiff-Appellant at 23. Those provisions prohibit a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, including a "threat to take any action that cannot legally be taken or that is not intended to be taken," *id.* § 1692e(5), "[t]he use or distribution of any written communication which . . . creates a false impression as to its . . . authorization . . . ," *id.* § 1692e(9), and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," *id.* § 1692e(10). Kuhne also alleges that defendants violated 15 U.S.C. § 1692f, which prohibits "[t]he collection of any amount . . . unless such amount is . . . permitted by law." *Id.* § 1692(f)(1). Finally, he alleges that defendants violated N.Y. GEN. BUS. LAW § 349, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. GEN. BUS. LAW § 349.

6

NCC-2's suit and incurred $1,000 in legal fees." Brief for Plaintiff-Appellant at 7. He further alleges that "[h]e also suffered from symptoms of emotional distress and had to take time off from work to go to court to meet with his attorney." *Id.*

In January 2008, the parties filed with the District Court competing motions for summary judgment. On March 5, 2008, the District Court agreed with defendants and held that NCC-2 is not a debt collection agency. *Kuhne v. Cohen & Slamowitz, LLP*, No. 07 Civ. 1364(HB), 2008 WL 608607 (S.D.N.Y. Mar. 5, 2008). It noted that "Kuhne's claim that [d]efendants violated the FDCPA and [N.Y. GEN. BUS. LAW § 349] rests entirely on his assertion that the New York City debt licensing statute required NCC-2 to be licensed before it could sue to collect a debt." *Id.* at *2. The District Court examined the legislative purpose of New York City's licensing requirement, New York state case law interpreting § 20-489(a) and a letter from DCA's General Counsel opining that entities such as NCC-2 are not debt collection agencies under the Code. *Id.* at *2-6. It concluded that "[i]n light of the legislative intent, the case law, the administrative interpretation embodied in the [DCA] letter and Encore's corporate structure, the mere commencement of a lawsuit in the name of a holding company with no employees does not mandate application of the New York City licensing regime." *Id.* at *6. It emphasized that "[t]o require NCC-2 to be licensed, when it had no direct contact with the consumer, would run afoul of the purpose of the New York City licensing statute and the FDCPA, which are aimed at preventing abusive collection practices." *Id.* The District Court entered judgment in favor of defendants shortly thereafter. Kuhne timely filed a notice of appeal.

On appeal, Kuhne challenges the District Court's legal determination that NCC-2 is not a

debt collection agency as defined under the pre-amendment version of N.Y.C. Admin. Code § 20-489(a). On April 9, 2009, MFY Legal Services, Inc. ("MFY")—a not-for-profit organization that provides legal counseling and representation to New York residents who are contacted or sued by debt collectors—filed a motion to appear as *amicus curiae* in support of Kuhne. Along with its motion, MFY filed a letter dated March 30, 2009, pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure. The letter informed this Court of a local law passed by the New York City Council and signed into law on March 18, 2009 by the Mayor, which amends, *inter alia*, N.Y.C. Admin. Code § 20-489(a). It provides, in relevant part, that a debt collection agency "shall also include a buyer of delinquent debt who seeks to collect such debt either directly or through the services of another by, including but not limited to, initiating or using legal processes or other means to collect or attempt to collect such debt." N.Y.C. Local Law No. 15 (2009) (Council Int. No. 660-A). There is no dispute that entities such as NCC-2 fall within the scope of Local Law No. 15's definition of a "debt collection agency." The amendment became effective 120 days after its enactment, *see id.* § 6, i.e.*,* on July 16, 2009.

As discussed more fully *infra*, the passage of Local Law No. 15 and its legislative history are relevant to the proper interpretation of the pre-amendment version of N.Y.C. Admin. Code § 20-489(a). Accordingly, we ordered the parties to file letter briefs addressing the amendment's import on their respective positions. We also granted MFY's motion to appear as *amicus curiae* and to participate in oral argument. We now consider their arguments.

**DISCUSSION**

**I.    N.Y.C. Admin. Code § 20-489(a)**

The threshold question on appeal is whether NCC-2 is a "debt collection agency" as defined under the pre-amendment version of N.Y.C. Admin. Code § 20-489(a) and is thus required to have a license under § 20-490 to engage in debt collection activities in New York City. This is an issue of statutory interpretation. "Our cardinal function in interpreting a New York statute is to ascertain and give effect to the intent of the legislature." *Tom Rice Buick-Pontiac v. Gen. Motors Corp.*, 551 F.3d 149, 154 (2d Cir. 2008) (citing *Abrams v. Ford Motor Co.*, 74 N.Y.2d 495, 500, 548 N.E.2d 906, 908 (1989); N.Y. STAT. LAW § 92). "'As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof.'" *Id.* at 154-55 (quoting *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 91 N.Y.2d 577, 583, 696 N.E.2d 978, 980 (1998)). We therefore begin, as we must, with the text of the statute in effect at the time of the alleged conduct, which provides in relevant part as follows:

> "Debt collection agency" shall mean a person engaged in business the principal purpose of which is to regularly collect or attempt to collect debts owed or due or asserted to be owed or due to another. The term does not include: . . . (7) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person as a secured party in a commercial credit transaction involving the creditor . . . .

N.Y.C. Admin. Code § 20-489(a).

Defendants contend that under this provision, NCC-2 is not a debt collection agency

9

because it does not "collect or attempt to collect debts." They emphasize that NCC-2 never once had contact with Kuhne, and MCM and C&S, both licensed debt collection agencies, engaged in all collection efforts on its behalf. Only after MCM's and C&S's collection efforts failed did C&S file the debt collection action against Kuhne on NCC-2's behalf. Defendants emphasize that NCC-2 was the named plaintiff simply because it was the owner of the debt.

Defendants' position seems to comport with the statute's declaration of its legislative purpose. Section 20-488 of N.Y.C. Admin. Code provides:

> The council hereby finds the presence of consumer related problems with respect to the practices of debt collection agencies whose sole concern is the collection of debts owed to their clients. While the majority of those engaged in this business are honest and ethical in their dealings, there is a minority of unscrupulous collection agencies in operation that practice abusive tactics such as threatening delinquent debtors, or calling such people at outrageous times of the night. These actions constitute tactics which would shock the conscience of ordinary people. Due to the sensitive nature of the information used in the course of such agency's [sic] everyday business, and the vulnerable position consumers find themselves in when dealing with these agencies, it is incumbent upon this council to protect the interests, reputations and fiscal well-being of the citizens of this city against those agencies who would abuse their privilege of operation. It is herein declared that the city should license debt collection agencies.

N.Y.C. Admin. Code § 20-488. Thus, the purpose of the statute is to prevent debt collectors from using unscrupulous collection tactics against the public. Because NCC-2 had no dealings with Kuhne, other than as the named plaintiff in the debt collection action, and hires licensed debt collection agencies to perform debt collection activities, it does not seem to serve the statute's purpose to require NCC-2 to be licensed as well.

Although there is no Appellate Division or New York Court of Appeals decision on

10

point, there is an opinion letter from DCA's General Counsel dated March 7, 2007 and a decision by the First Department Appellate Term from 2008 favoring this position. The General Counsel's letter states that "[a] debt buyer that merely purchases or acquires defaulted debt but does not engage in collection activities itself does not require a license from the Department." Letter from Marla Tepper, General Counsel of the DCA, to Dennis Malen, Malen & Assocs., P.C. (March 7, 2007) ("Tepper Letter"), *available at* J.A. 663-64. Because the DCA is the agency in charge of issuing the licenses, *see* N.Y.C. Admin. Code §§ 20-102, -491 to -93, a letter from its General Counsel interpreting the meaning of a "debt collection agency" may be entitled to respect at least to the extent that its interpretations have the power to persuade. *Cf. Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (discussing federal administrative law precedent). The Tepper Letter provides in relevant part:

> The Department of Consumer Affairs issues this letter in response to an inquiry from the Consumer Credit Association of Metropolitan New York, a local trade group, as to whether "debt buyers" that do not themselves engage in collection activities must be licensed by the Department. "Debt buyer" is a term commonly used to describe a purchaser or assignee of defaulted debt.
>
> In addressing this question, the Department first confirms its position that a purchaser or assignee of defaulted debt whose principal purpose is the collection of that debt, whether for itself or others, is a "debt collection agency" under New York City Administrative Code § 20-489(a). Debt buyers that engage in debt collection activities must therefore be licensed by the Department in order to collect debts in New York City [citing N.Y.C. Admin. Code § 20-490].
>
> A debt buyer that merely purchases or acquires defaulted debt but does not engage in collection activities itself does not require a license from the Department. . . . In enacting [§ 20-489], the City Council sought to curb abusive practices of debt collection

11

agencies by requiring licensing of those entities dealing directly with the consumer public in the collection of debts. Thus, under the Administrative Code, a "debt collection agency" is an entity engaged in *actively collecting or attempting to collect debts*.

J.A. 663-64 (emphasis added and citations omitted).

Thereafter, the Appellate Term of the Supreme Court for the First Department came to the same conclusion. *See MRC Receivables Corp. v. Morales*, 21 Misc. 3d 133(A), 873 N.Y.S.2d 513 (Table), 2008 WL 4754065 (full text) (N.Y. App. Term 1st Dep't 2008) ("*MRC II*"). The trial court had held in that case that "[t]here was no showing by the defendant that the plaintiff . . . engaged in collection activities sufficient to require plaintiff to obtain a license from the New York City Department of Consumer Affairs." *MRC Receivables Corp. v. Morales*, No. 64334/06 (N.Y. Civ. Ct. May 7, 2007), *available at* J.A. 668-69. In affirming the trial court, the Appellate Term relied on the Tepper Letter. It wrote:

Defendant's evidentiary submissions were insufficient to demonstrate that plaintiff, as the purchaser of the underlying debt, is a debt collection agency within the meaning of Administrative Code § 20-489(a), and thus subject to the licensing requirements of Administrative Code § 20-490. The record does not conclusively establish that plaintiff's "principal purpose . . . is to regularly collect or attempt to collect debts owed or due or asserted to be owed or due to another". There was no showing that plaintiff regularly and actively engages in collection activities.

*MRC II*, 21 Misc. 3d 133(A), 873 N.Y.S.2d 513, 2008 WL 4754065, at *1 (citation omitted).

Kuhne counters, however, that NCC-2 purchases debt for the sole purpose of attempting to collect it, and the mere fact that it hires another entity to undertake the collection efforts does not absolve it of its obligations under the N.Y.C. Admin. Code. He cites several lower court decisions in support of this proposition. Most of the authority offered by Kuhne is, in our

12

opinion, inapposite.[5]  However, he does cite *Rushmore Recoveries, XI, LLC v. Morningstar*,

Index No.: 19884-06 (N.Y. Civ. Ct. July 17, 2007), *available at* J.A. 665-67, in which the

supposed debt collection agency purchased consumer debt and then immediately "forwarded [it]

to its attorneys for collection activity." *Id.* at 2; J.A. 666.  The court held that the principal

purpose of the company's business, therefore, was debt collection.  The plaintiff moved for

renewal and reargument in light of the Tepper Letter.  The court affirmed its prior ruling, writing

---

[5] Three of the five New York state cases cited by Kuhne address the question of whether an entity that actively collects debt due to itself qualifies as a debt collection agency under § 20-489(a).  This issue has been litigated on several occasions because § 20-489(a) provides that a "'[d]ebt collection agency' shall mean a person engaged in business the principal purpose of which is to regularly collect or attempt to collect debts owed or due or asserted to be owed or due to *another*."  N.Y.C. Admin. Code § 20-489(a) (emphasis added).  *See Dep't of Consumer Affairs v. Asset Acceptance, LLC*, Violation No. PL1044927 (City of N.Y. Dep't of Consumer Affairs July 24, 2006), *aff'd*, Appeal Determination, Violation No. PL1044927 (Feb. 23, 2007), *available at* J.A. 648-62; *Centurion Capital Corp. v. Druce*, 14 Misc. 3d 564, 567-68, 828 N.Y.S.2d 851, 853-54 (N.Y. Civ. Ct. 2006) (concluding that "the New York City statute, like the federal statute, should be interpreted to define debt collection agencies as entities which collect defaulted debt, whether or not the debt they collect is due to themselves or others"); *PRA III, LLC v. MacDowell*, 15 Misc. 3d 1135(A), 841 N.Y.S.2d 822 (Table), 2007 WL 1429026 (full text), at *1 (N.Y. Civ. Ct. 2007) ("Entities such as plaintiff which purchase defaulted debt and collect the debt for themselves are debt collectors. . . . The fact that it has purchased the debt does not change the requirement that it be licensed[;] only the originator of the debt is excluded from the statute." (citing *Centurion Capital Corp.*, 14 Misc. 3d 564, 828 N.Y.S.2d 851)).  Kuhne also cites *Great Seneca Financial Corp. v. Dowd*, Index No.: 012627/05 (N.Y. Civ. Ct. Jan. 24, 2008), *available at* Plaintiff-Appellant Addendum to Appellant's Brief, in which the court concluded that Great Seneca, a purchaser of defaulted debt, was a debt collector, but only after ordering it to produce evidence that it did not engage in debt collection activities and it failed to do so.  Kuhne's citation to *Palisades Acquisition XVI, LLC v. Morningstar*, Index No. 55981/07 (N.Y. Civ. Ct. Apr. 15, 2008), *available at* Plaintiff-Appellant Letter dated July 19, 2008, is also unhelpful.  Although this decision states that an entity that makes money by purchasing defaulted consumer debt and then trying to get the debt collected is a debt collection agency, it is unclear whether the entity in that case actively attempted to collect the debt itself, or contracted with a third party to do so; in any event, the court appears to have simply relied on *Centurion*, which is inapposite.

13

"Plaintiff has presented no evidence that this court's prior decision was erroneous due to an opinion letter of the DCA. Such letter is not sufficient to override, erode, or clarify a decision of a court of law." *Rushmore Recoveries XI, LLC v. Morningstar*, Index No.: 19884/06, at 2 (N.Y. Civ. Ct. Nov. 9, 2007). *Rushmore Recoveries* is not easily distinguishable from this case. Thus, while the weight of the authority in New York, albeit from lower courts, appears to be in defendants' favor, Kuhne's position is not without support.

During the pendency of this appeal, moreover, the City Council passed legislation amending N.Y.C. Admin. Code § 20-489(a) and thereby complicated the determination of whether entities such as NCC-2 fall within the pre-amendment definition of debt collection agency. *See* N.Y.C. Local Law No. 15 (2009) (Council Int. No. 660-A). The amendment was passed by the City Council on March 11, 2009 and signed into law by the Mayor on March 18, 2009. *Id.* It became effective 120 days "after it [was] enacted into law," *id.* § 6, i.e., July 16, 2009. It provides in relevant part:

> "Debt collection agency" shall mean a person engaged in business the principal purpose of which is to regularly collect or attempt to collect debts owed or due or asserted to be owed or due to another *and shall also include a buyer of delinquent debt who seeks to collect such debt either directly or through the services of another by, including but not limited to, initiating or using legal processes or other means to collect or attempt to collect such debt.*

*Id.* § 1.

The text and legislative history of this amendment make clear that its definition of debt collection agency includes those entities, like NCC-2, that have made the argument that they are not subject to the licensing requirements because they themselves do not engage directly in the

collection activities.  The Committee Report states in pertinent part:

> Although both companies contracted by creditors to collect debts on their behalf and third-party buyers of defaulted debt are considered under the Code to be debt collection agencies and as such must be licensed, there has been some confusion regarding the licensing requirements for debt-buyers who hire law firms to initiate litigation against debtors.  In these situations, some debt-buyers have claimed they are not required to be licensed since they are not "directly" engaging in collection activities but rather hiring others to collect the debt on their behalf.  . . . *[This bill] would amend the definition of 'debt collection agency' to include debt-buyers who use third party agencies or attorneys to collect such debt from a debtor.  By clarifying the definition of debt collection agency, the bill seeks to address debt buyer arguments, noted above, that once they contract collection of the debt to another party they are engaged in "passive" collection and as such are not required to be licensed as a debt collection agency by DCA.*

COMM. ON CONSUMER AFFAIRS, COMM. REPORT OF THE GOVERNMENTAL AFFAIRS DIV., A LOCAL LAW TO AMEND THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK, IN RELATION TO BUYERS OF CONSUMER DEBT, Local Law No. 15, at 7-8 (2009) (emphasis added).

Kuhne and defendants each argue that this change in law supports their respective positions.  Kuhne argues that "[t]he Committee Report evidences the legislature's intent to clarify, not alter, existing law," Letter Brief for Plaintiff-Appellant at 4, thereby implying that the intent of the pre-amendment version was likewise to treat entities such as NCC-2 as debt collection agencies.  Defendants argue that "[h]ad Appellant's interpretation been correct, there would have been no need for the New York City Council to pass this legislation."  Letter Brief for Defendants-Appellees at 2.

Under New York law, courts may look to a subsequent amendment of a law in order to discern the meaning of the pre-amendment version.  The general rule has long been codified in

15

N.Y. STAT. LAW § 193(a), which provides, "The Legislature, by enacting an amendment of a statute changing the language thereof, is deemed to have intended a material change in the law." *Id.*; *see also id.*, cmt. ("A material change in the phraseology of an act is generally regarded as a legislative construction that the law so amended did not originally embrace the amended provisions, especially if it follows soon after controversies have arisen concerning the interpretation of the original statute."). "It might occasionally happen, of course, that the Legislature in attempting to amend a statute would, by the use of inapt terms, really effectuate no change; but a construction which imputes such an inoffensive folly to the lawmaking body is to be avoided." *Id.* "Although generally, a statutory amendment is presumed to have been intended to change the law, the legislative history may indicate that the amendment was intended instead as a clarification." 1A Norman J. Singer, STATUTES AND STATUTORY CONSTRUCTION § 22:30, at 366 (6th ed. 2002).

The issue of whether an amendment's purpose is to clarify or to adopt a substantive change often arises when determining whether the amended law should be applied retroactively. In this context, New York courts "have found it relevant when the legislative history reveals that the purpose of new legislation is to clarify what the law was always meant to say and do." *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 91 N.Y.2d 577, 585, 696 N.E.2d 978, 981 (1998). Kuhne argues that this is precisely what the Committee Report does. He contends that by characterizing the amendment as a clarification, the Committee Report necessarily implies that the unamended version of § 20-489(a) applies to entities such as NCC-2. But, the New York Court of Appeals has warned that "labeling the legislation as 'remedial' in this regard is not

16

dispositive in light of other indicators of legislative intent." *Id.* at 585, 696 N.E.2d at 981; *see also id.* at 586, 696 N.E.2d at 981-82 ("Although these averments 'may be accorded some weight in the absence of more definitive manifestations of legislative purpose', such indicators of legislative intent must be cautiously used." (citation omitted)); *Town of Cortlandt v. N.Y. State Bd. of Real Prop. Servs.*, 830 N.Y.S.2d 189, 192, 36 A.D.3d 823, 826 (2d Dep't 2007). We believe it most prudent to pass no further on these issues of statutory interpretation, as we respectfully conclude that certification is the most appropriate path to decide this case.

## II.    Certification

Although the parties did not request certification, we are empowered to seek certification *nostra sponte*.[6] *City of N.Y. v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 457 (2d Cir. 2008) (citing 2d Cir. R. § 0.27)). At the outset, we note that there is no Appellate Division or New York Court of Appeals decision on point. *See, e.g.*, *City of N.Y. v. Beretta U.S.A. Corp.*, 524 F.3d 384, 407 (2d Cir. 2008) (Katzmann, J., dissenting) (noting that the use of certification for an unsettled area of state law is "[i]n keeping with our preference that states define the meaning of their own laws in the first instance"). Given that the existing case law on this issue has come exclusively from two lower state courts, "we conclude that we have insufficient guidance from the courts of New York confidently to decide" this issue. *N.Y. Univ. v. First Fin. Ins. Co.*, 322 F.3d 750, 757 (2d

---

[6] We note that at oral argument when this panel broached the prospect of certification to the New York Court of Appeals, the parties provided no objection, citing only the inconvenience of the added cost in further litigating this appeal. Moreover, defendants appear to suggest in their brief that resolution by the New York Court of Appeals would be appropriate. *See* Brief for Defendants-Appellees at 24 (noting the unresolved state law question and commenting that this case may be "before the wrong court").

Cir. 2003).

This problem is compounded because we believe that the legislative history surrounding Local Law No. 15 injects a certain ambiguity in the pre-amendment version of § 20-489(a) that may well be resolved with reference to the public policy goals underlying the City of New York's debt collection laws. *See Sealed v. Sealed*, 332 F.3d 51, 59 (2d Cir. 2003) ("Where a question of statutory interpretation implicates the weighing of policy concerns, principles of comity and federalism strongly support certification." (citing *Cweklinsky v. Mobil Chem. Co.*, 297 F.3d 154, 160 (2d Cir. 2002))). There can be no doubt that the City of New York has a compelling interest in protecting consumers from unscrupulous debt collectors, and thus the statutory scheme at issue here implicates significant issues of local public policy. *See* Brief for Plaintiff-Appellant at 22 (citing "[t]he recent explosion of massive debt-buying operations [that] ha[ve] led to heightened interest on the part of the DCA and the State Assembly, leading to public hearings"); *cf. Sealed*, 332 F.3d at 59 (citing *Israel v. State Farm Mut. Auto. Ins. Co.*, 239 F.3d 127, 135 (2d Cir. 2000)). Obviously, this issue has the attention of the City Council in light of its recent legislation amending N.Y.C. Admin. Code § 20-489(a).

It is also worth noting that, under New York law, unlike the law of this Circuit, "it is appropriate to examine the legislative history [of a statute] even though the language of [the statute] is clear." *Riley v. County of Broome*, 95 N.Y.2d 455, 463, 742 N.E.2d 98, 102 (2000); *contra Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005) ("If the meaning is plain, we inquire no further. Only if we discern ambiguity do we resort first to canons of statutory construction, and, if the meaning remains ambiguous, to legislative history." (citations

18

omitted)).  Because we believe that  "[a] state court is bound to have a better idea of the elasticity of the state's statutes than a federal court," *Majors v. Abell*, 317 F.3d 719, 724 (7th Cir. 2003), we leave this task to the New York Court of Appeals, *cf. Sealed*, 332 F.3d at 59.

Furthermore, as explained *supra*, interpretation of the pre-amendment version of § 20-489(a) depends in part on whether the recent amendment is a mere clarification of the law or a substantive change.  The answer to this question also affects the determination of whether the amendment should apply retroactively.[7]  As noted, in determining whether a statute should be given retroactive effect, the New York Court of Appeals has "found it relevant when the legislative history reveals that the purpose of new legislation is to clarify what the law was always meant to say and do."  *Id.* at 585, 696 N.E.2d at 981; *accord In re Gleason (Michael Vee, Ltd.)*, 96 N.Y.2d 117, 122, 749 N.E.2d 724, 726 (2001).  The issue of the recent amendment's retroactivity, though not raised by any of the parties, poses yet another unsettled question of law, which is likely to arise again in the future.  This consideration further militates in favor of certification of the related question that is now before us.  *Cf. Golden v. Winjohn Taxi Corp.*, 311 F.3d 513, 524 (2d Cir. 2002).

Under these circumstances, certification to the New York Court of Appeals is the most prudent path.

---

[7] The fact that the statute did not become effective until 120 days after its enactment, i.e., on July 16, 2009, is not dispositive of whether it applies retroactively.  *See Majewski*, 91 N.Y.2d at 583, 696 N.E.2d at 980 ("[T]he date that legislation is to take effect is a separate question from whether the statute should apply to claims and rights then in existence.").

19

**CONCLUSION**

For the foregoing reasons, we respectfully certify to the New York Court of Appeals the following two questions:

(1) Whether NCC-2 is a "debt collection agency" under the pre-amendment version of New York City Administrative Code § 20-489(a).

(2) If the answer to question (1) is yes, whether NCC-2 violated New York General Business Law § 349 under the circumstances presented in this case.

In formulating these two questions, as we have here, we do not mean to limit the Court of Appeals's response. The certified questions may be deemed expanded to cover any further pertinent question of New York law that the Court of Appeals finds appropriate to answer in connection with these issues, including whether the amended version of § 20-489(a) applies retroactively. This panel retains jurisdiction so that we may dispose of the appeal following the New York Court of Appeals's decision.[8]

It is hereby ORDERED that the Clerk of this Court transmit to the Clerk of the New York Court of Appeals a Certificate, as set forth below, together with a copy of this opinion and a complete record of the case, including a complete set of briefs and appendices filed in this Court by the parties and amicus, all correspondence submitted pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure in connection with this appeal and the parties' letter briefs entered

---

[8] The question whether NCC-2 is a debt collection agency under N.Y.C. Admin. Code § 20-489(a) directly impacts two outstanding issues presented in this appeal. Thus, we reserve decision on: (1) whether defendants violated the FDCPA; and (2) whether the licensing scheme imposed by N.Y.C. Admin. Code §§ 20-488 to 90 violates the Commerce Clause of the United States Constitution.

20

on the 17th and 24th of April 2009. The parties shall bear equally any costs or fees imposed by the New York Court of Appeals.

## CERTIFICATE

The foregoing is hereby certified to the New York Court of Appeals, pursuant to 2d Cir. R. § 0.27 and N.Y. Comp. Codes. R. & Regs. tit. 22, 500.27, as ordered by the United States Court of Appeals for the Second Circuit.