# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**862**

**CA 12-02161**

PRESENT: SCUDDER, P.J., PERADOTTO, CARNI, VALENTINO, AND WHALEN, JJ.

---

IN THE MATTER OF WOODSIDE MANOR NURSING HOME,
AVON NURSING HOME, THE BRIGHTONIAN, CONESUS
LAKE NURSING HOME, ELM MANOR NURSING HOME,
HORNELL NURSING HOME, HURLBUT NURSING HOME,
NEWARK MANOR NURSING HOME, PENFIELD PLACE,
SENECA NURSING AND REHABILITATION CENTER,
SHOREWOODS NURSING HOME AND WEDGEWOOD NURSING
HOME, PETITIONERS-RESPONDENTS,

                V                          MEMORANDUM AND ORDER

NIRAV R. SHAH, M.D., COMMISSIONER OF HEALTH,
STATE OF NEW YORK, ROBERT L. MEGNA, DIRECTOR OF
BUDGET, STATE OF NEW YORK, OR THEIR SUCCESSORS,
RESPONDENTS-APPELLANTS.

---

ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL, ALBANY (VICTOR PALADINO OF
COUNSEL), FOR RESPONDENTS-APPELLANTS.

HARTER SECREST & EMERY LLP, ROCHESTER (THOMAS G. SMITH OF COUNSEL),
FOR PETITIONERS-RESPONDENTS.

---

     Appeal from a judgment (denominated order) of the Supreme Court,
Monroe County (William P. Polito, J.), entered June 28, 2012 in a
proceeding pursuant to CPLR article 78. The judgment granted the
petition in part by remitting the matter to the Department of Health
for further proceedings.

     It is hereby ORDERED that the judgment so appealed from is
unanimously modified on the law by denying the petition in its
entirety and dismissing the proceeding and as modified the judgment is
affirmed without costs.

     Memorandum: Petitioners are 12 residential health care
facilities, as defined in Public Health Law § 2801 (3), that
participate in the Medicaid program (*see* 42 USC § 1396 *et seq.*).
Pursuant to the Medicaid program, such facilities are entitled to
reimbursement for services that are provided to eligible Medicaid
recipients (*see* § 1396a *et seq.*). Each state participating in the
program is required to adopt a method for reimbursing such facilities
(*see* § 1396a [a] [13] [A]), as well as a procedure for providing
facilities such as petitioners with administrative review of the
payment rates (*see* 42 CFR 447.253 [e]). New York's method of
determining the rates of payment and the administrative review

procedure are found in Public Health Law article 28 and 10 NYCRR part 86.  Administrative challenges to rate determinations, also known as "rate appeals" (10 NYCRR 86-2.13 [b]), are governed in particular by Public Health Law § 2808 and 10 NYCRR 86-2.13 and 86-2.14.

Between the years 2000 and 2009, petitioners collectively filed 95 rate appeals with the New York State Department of Health (DOH). At the time the appeals were filed, 10 NYCRR 86-2.14 (b) mandated that the Commissioner of Health (Commissioner) act upon such appeals "within one year of the end of the 120-day period" within which facilities were obligated to file the rate appeal (see 10 NYCRR 86-2.13 [a]).

In 2010, the legislature enacted Public Health Law § 2808 (17) (b), which initially provided that, "for the state fiscal year beginning April [1, 2010] and ending March [31, 2011], the [C]ommissioner shall not be required to revise certified rates of payment established pursuant to [article 28] for rate periods prior to April [1, 2011], based on consideration of rate appeals filed by residential health care facilities . . . in excess of an aggregate annual amount of [80] million dollars for such state fiscal year" (§ 2808 former [17] [b]; see L 2010, ch 109, part B, § 30).  In determining which rate appeals would be subject to the moratorium and which rate appeals would be processed pursuant to the statutory cap, the Commissioner was to prioritize the appeals and, in doing so, was to consider "which facilities . . . [were] facing significant financial hardship" (§ 2808 [17] [b]).

In 2011, section 2808 (17) (b) was amended to expand the time period of the rate appeal moratorium through March 31, 2015 and to reduce the rate appeal cap to 50 million dollars for the fiscal year April 1, 2011 through March 31, 2012 (see L 2011, ch 59, part H, § 98).  In addition, section 2808 (17) (c) was added, which provided that "for periods on and after April [1, 2011] the [C]ommissioner shall promulgate regulations . . . establishing priorities and time frames for processing rate appeals, including rate appeals filed prior to April [1, 2011] . . . ; provided, however, that such regulations shall not be inconsistent with the provisions of [subdivision (17)] (b)" (see L 2011, ch 59, part H, § 98).

Respondents failed to act on any of the 95 rate appeals filed by petitioners between 2000 and 2009.  By letters dated September 13, 2011, each petitioner demanded that the DOH "immediately resolve the [applicable] administrative rate appeals."  When no response was given and no action was taken, petitioners commenced this CPLR article 78 mandamus proceeding seeking, inter alia, to compel respondents "to immediately address and resolve [p]etitioners' outstanding Medicaid rate appeals."  Respondents moved to dismiss the petition, contending that petitioners had failed to exhaust their administrative remedies and that the proceeding was barred by the statute of limitations. Respondents also contended that petitioners' rate appeals were subject to the moratorium established by Public Health Law § 2808 (17) (b) and thus that petitioners were required to await an administrative determination of their rate appeals before seeking judicial

intervention.

Supreme Court denied respondents' motion and granted the petition in part by remitting the matter to the DOH "to complete resolution of the [rate] appeals in accordance with the laws in effect at the time of filing." The court concluded that section 2808 (17) (b) and (c) did not apply retroactively to rate appeals filed before the moratorium was enacted and thus that petitioners could properly seek mandamus to compel compliance with the mandated laws requiring reviews of rate appeals within a certain period of time. The court also concluded that the proceeding was not barred by the statute of limitations.

On appeal, respondents contend that, because section 2808 (17) (b) and (c) apply to petitioners' rate appeals, petitioners do not have a clear legal right to compel respondents to process their rate appeals. They therefore contend that mandamus does not lie and that petitioners must exhaust their administrative remedies before seeking judicial intervention. We note that respondents have not pursued in their brief the issue raised in their motion papers that the petition should be dismissed pursuant to the statute of limitations. We therefore deem that issue abandoned (*see Ciesinski v Town of Aurora*, 202 AD2d 984, 984).

We agree with respondents that section 2808 (17) (b) and (c) apply retroactively to petitioners' rate appeals. The seminal case on whether statutes are to be applied retroactively is *Majewski v Broadalbin-Perth Cent. Sch. Dist.* (91 NY2d 577, 584), which provides, in relevant part, that "[i]t is a fundamental canon of statutory construction that retroactive operation is not favored by courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it" (*see generally* McKinney's Cons Laws of NY, Book 1, Statutes § 51 [b]). We conclude that the language of the statute requires that it be applied retroactively. Public Health Law § 2808 (17) (b) states that, for the period from April 1, 2010 through March 31, 2015, "the [C]ommissioner shall not be required to revise certified rates of payment . . . for rate periods prior to April [1, 2015], based on consideration of rate appeals filed by residential health care facilities" in excess of the monetary cap. While there is no explicit statement that the moratorium and cap shall apply to rate appeals filed before April 1, 2010, the statute specifically states that no revisions are required for any period before April 1, 2015 where the revision would emanate from a rate appeal filed by a residential health care facility. In our view, the necessary implication of that language is that the statute applies to any rate appeal seeking a revision for any period before April 1, 2015, including any revisions resulting from rate appeals filed before the statute took effect.

Moreover, subdivision (17) (c), which was added in 2011, specifically states that the Commissioner is required to promulgate regulations establishing priorities and time frames "for processing rate appeals, including rate appeals filed prior to April [1, 2011] . . . ; provided, however, that such regulations shall not be

inconsistent with the provisions of [subdivision (17)] (b)."  Even if we were to conclude that subdivision (17) (c) does not explicitly state that the statute applies to rate appeals filed before the moratorium and cap took effect, the necessary implication is that the moratorium and cap apply to all pending rate appeals inasmuch as there would be no need to prioritize the handling of those appeals unless they were encompassed by the moratorium and cap.

Even assuming, arguendo, that the language of the statute is ambiguous, "we [would] turn to legislative history to steer our analysis" (*Majewski*, 91 NY2d at 584).  As noted, subdivision (17) (b) was initially enacted to provide the moratorium and cap for a one-year period:  April 1, 2010 through March 31, 2011.  The legislation was part of a larger bill that was deemed "necessary to provide enhanced fiscal management and generate savings for the 2010-11 State fiscal year" (Governor's Approval Mem, Bill Jacket, L 2010, ch 109 at 4). The intent of the entire legislation was to "maintain continuity in State services and financial management in the absence of an enacted 2010-11 Budget" and "to ensure the fiscal stability of the State" (Senate Introducer Mem in Support, Bill Jacket, L 2010, ch 109 at 8-9).  Specifically, part B of the legislation, which included the moratorium and cap contained in Public Health Law § 2808 (17) (b), was deemed "necessary to achieve $270 million in savings in the 2010-11 State fiscal year" (*id.* at 8).  In enacting the time-period extension and adding subdivision (17) (c), the Governor stated that "[t]he bill is necessary to enact the 2011-2012 State budget" (Governor's Approval Mem, Bill Jacket, L 2011, ch 59 at 8).

In our view, the intent of the 2010 and 2011 legislation was to decrease costs in order to maintain the financial stability of the State.  If the statute were to apply only to rate appeals filed after the moratorium and cap were imposed, then the goal of the statute would not have been accomplished.  There were approximately 7,500 rate appeals pending as of January 2012.  Had the Commissioner been required to make revisions and payments on all of the rate appeals pending at the time of the moratorium, there would have been little, if any, savings.  As unfair as it may appear to be to all those who had appeals pending for years, we conclude that the statute was intended to apply retroactively to all rate appeals, "including rate appeals filed prior to April [1, 2011]" (Public Health Law § 2808 [17] [c]).

Inasmuch as the moratorium applies retroactively to petitioners' rate appeals, petitioners do not have a clear legal right to relief, and their petition must be denied (*see e.g. Matter of Urban Strategies v Novello*, 297 AD2d 745, 746; *Matter of Jay Alexander Manor v Novello*, 285 AD2d 951, 953, *lv denied* 97 NY2d 610; *see generally Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs.*, 77 NY2d 753, 757).  We therefore modify the judgment by denying the petition in its entirety and dismissing the proceeding.

Entered:  October 4, 2013                         Frances E. Cafarell
                                                  Clerk of the Court