Matter of Bainbridge Nursing Home v Zucker (2019 NY Slip Op 01879)





Matter of Bainbridge Nursing Home v Zucker


2019 NY Slip Op 01879


Decided on March 14, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 14, 2019

527107

[*1]In the Matter of BAINBRIDGE NURSING HOME, Appellant,
v
HOWARD ZUCKER, as Commissioner of Health, et al., Respondents.

Calendar Date: January 9, 2019

Before: Egan Jr., J.P., Clark, Mulvey, Devine and Rumsey, JJ.


Harter Secrest & Emery LLP, Rochester (John P. Bringewatt of counsel), for appellant.
Letitia James, Attorney General, Albany (Jonathan D. Hitsous of counsel), for respondents.



MEMORANDUM AND ORDER
Rumsey, J.
Appeal from a judgment of the Supreme Court (Platkin, J.), entered April 26, 2018 in Albany County, which, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, granted respondents' motion to dismiss the petition/complaint.
Petitioner operates a residential health care facility and several adult day health care (hereinafter ADHC) facilities and receives reimbursement for services provided to eligible Medicaid recipients. From October 2012 through May 2017, petitioner filed administrative appeals challenging the Medicaid reimbursement rates established by the Department of Health for services that it provided in 2009 through 2017. Petitioner's rate appeals are subject to Public Health Law § 2808 (17) (b), which, as relevant here, imposes a cap of $80 million per fiscal year for adjustments to reimbursement rates and authorizes a moratorium on the processing of rate appeals falling above the cap. In prioritizing rate appeals, the Department is directed to consider which facilities are facing "significant financial hardship" and such other factors it deems appropriate (Public Health Law § 2808 [17] [b]; see Matter of Schenectady Nursing & Rehabilitation Ctr., LLC v Shah, 124 AD3d 1023, 1024 [2015]). Petitioner concedes that it has never claimed that it suffers significant financial hardship. The Department has taken no action on petitioner's rate appeals.
Over the years, residential care facilities have submitted thousands of rate appeals and significant litigation has ensued seeking to compel determination of the appeals despite the cap and moratorium (see Matter of Woodside Manor Nursing Home v Shah, 113 AD3d 1142, 1146 [2014]). Beginning in 2013, the Department, the Division of the Budget and the Office of the Medicaid Inspector General entered into negotiations on behalf of the state with representatives from the residential care facility industry that resulted in a March 9, 2016 Universal Settlement Agreement (hereinafter the settlement agreement), which generally provided that the state would pay participating facilities $850 million over a five-year period and, in return, the facilities would discontinue and release with prejudice all known or unknown claims, rate appeals and related [*2]litigation, subject to certain enumerated exclusions, including ADHC rate appeals. Petitioner is a signatory to the settlement agreement.
Petitioner commenced this hybrid CPLR article 78 proceeding and declaratory judgment action in November 2017 seeking, in four causes of action, to, among other things, compel the Department to process the pending rate appeals. Respondents made a pre-answer motion to dismiss the petition/complaint, contending that the proceeding/action is barred by the terms of the settlement agreement. Supreme Court concluded that, although the settlement agreement did not preclude administrative consideration of petitioner's ADHC rate appeals, its express terms barred all litigation seeking to compel the Department to consider rate appeals pursuant to Public Health Law § 2808 (17) (b). Finding that each of the four causes of action asserted by petitioner sought to compel consideration of the rate appeals, Supreme Court granted respondents' motion and dismissed the petition/complaint. Petitioner appeals.
The first cause of action seeks mandamus compelling the Department to consider the rate appeals. The second cause of action asserts that the Department has exceeded its administrative authority by creating a generally applicable rule, in violation of the State Administrative Procedure Act, when it adopted a policy of processing rate appeals only where a facility suffers from significant financial hardship. The third and fourth causes of action assert that the Department's failure to process the rate appeals violates petitioner's due process rights under the US and NY Constitutions. Notably, in each instance, petitioner seeks relief aimed at compelling petitioner to process its pending rate appeals.
In light of the relief demanded by petitioner, Supreme Court properly concluded that this proceeding/action is barred by the settlement agreement. "The settlement agreement is a contract that, if unambiguous, must be enforced according to the plain meaning of its terms. Whether a contract is ambiguous is a question of law for the court to determine" (Erie Blvd. Hydropower, L.P. v State of New York, 113 AD3d 906, 907 [2014] [internal quotation marks and citations omitted]). Under sections 2.1 (v) and 2.2 (v) of the settlement agreement, petitioner agreed, except as otherwise expressly excluded in said agreement, to release all known or unknown claims, rate appeals and litigation relating to the Department "being compelled to consider a rate appeal under [Public Health Law § 2808 (17) (b)] prior to the date of the last installment payment made under section 7 herein."[FN1]
The settlement agreement contains two relevant provisions separately excluding certain specified categories of rate appeals and litigation from the matters released. Section 9 of the settlement agreement excludes certain categories of rate appeals, including, as relevant here, petitioner's ADHC rate appeals (section 9.1). Thus, petitioner may continue to pursue administrative review of the pending rate appeals. However, pursuant to the plain language of the settlement agreement, petitioner waived and released its right to commence or maintain any litigation seeking to compel the Department to process or consider the rate appeals at issue. In that regard, section 10.2 of the settlement agreement excludes litigation commenced "subsequent to January 1, 2012 that challenges the rates established pursuant to [Public Health Law § 2808 (2-c)],
. . . with the exception of any litigation by [f]acilities related to . . . (iv) [the Department] being compelled to consider a rate appeal under [Public Health Law § 2808 (17) (b)]."
Although petitioner contends that we should not construe the settlement agreement in a manner that permits the Department to refrain from taking action on the rate appeals because such inaction violates federal law mandating prompt review of such appeals, we note that petitioner entered into the settlement agreement by which it voluntarily waived any statutory or constitutional right to commence litigation seeking to compel the Department to consider the rate appeals (see Matter of Jana-Rock Constr. v New York State Dept. of Transp., 267 AD2d 686, 687 [1999]). We further note that our conclusion is consistent with the clearly-expressed [*3]purpose of the settlement agreement — scheduled payment of $850 million by the state to participating facilities in return for resolution of litigation over rate appeals (see e.g. Erie Blvd. Hydropower, L.P. v State of New York, 113 AD3d at 908). Accordingly, Supreme Court properly granted respondents' motion to dismiss this proceeding/action. The parties' remaining contentions have been considered and found to lack merit.
Egan Jr., J.P., Clark, Mulvey and Devine, JJ., concur.
ORDERED that the judgment is affirmed, without costs.



Footnotes

Footnote 1: Section 7 of the settlement agreement provides for the distribution of payments, with the last installment due in the fourth quarter of state fiscal year 2018-2019; however, that payment may be delayed, at the discretion of the state, until the end of state fiscal year 2019-2020.