Hasan v Terrace Acquisitions II, LLC (2024 NY Slip Op 00739)

Hasan v Terrace Acquisitions II, LLC

2024 NY Slip Op 00739

Decided on February 13, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 13, 2024

Before: Webber, J.P., Singh, Kennedy, Scarpulla, Rosado, JJ. 

Index No. 818734/22 Appeal No. 1640 Case No. 2023-02779 

[*1]Johnie Hasan etc., Plaintiff-Appellant,
v
Terrace Acquisitions II, LLC, Doing Business as Fordham Nursing and Rehabilitation Center, Also Known as Kings Terrace Nursing Home, Defendant-Respondent.

Mischel & Horn, P.C., New York (Scott T. Horn of counsel), for appellant.
Wilson Elser Moskowitz Edelman & Dicker LLP, Albany (Steven V. DeBraccio of counsel), for respondent.

Order, Supreme Court, Bronx County (Joseph E. Capella, J.), entered May 30, 2023, which granted defendant's motion to dismiss the complaint, unanimously affirmed, without costs.
Plaintiff's decedent was a resident of defendant's nursing home facility from around June 1, 2019 to April 13, 2020, when he was hospitalized and diagnosed with COVID-19, and was again a resident of the facility from April 21, 2020 until his death on May 6, 2020. Plaintiff asserts causes of action for negligence, gross negligence, wrongful death, and violation of the decedent's rights under the Public Health Law.
At the beginning of the COVID-19 pandemic in early 2020, then-Governor Andrew Cuomo signed executive orders declaring a disaster emergency in New York State (see Executive Order [A. Cuomo] No. 202 [9 NYCRR 8.202]). The Governor also granted health care workers immunity from civil liability, except for instances of gross negligence, for any injury or death alleged to have been sustained directly as a result of providing medical services in support of New York's response to the COVID-19 pandemic (see id. at 8.202.10]). The legislature then enacted the Emergency or Disaster Treatment Protection Act (EDTPA), adding now-former Public Health Law Article 30-D (L 2020 ch 56, Part GGG, § 1). The Act provided that hospitals, nursing homes, and health care professionals, among others, were immune from potential liability arising from actions related to the care of patients with COVID-19. The EDTPA was signed into law on April 3, 2020, but the legislature expressly provided that the immunity was in effect immediately, retroactive from the beginning of Governor Cuomo's declaration of a state of emergency on March 7, 2020, and that it would apply to acts or omissions that occurred on or after the date of the COVID-19 emergency declaration (id. at §§ 1, 2).
On April 6, 2021, just over one year after it was first enacted and approximately 11 months after the decedent's death at defendant's facility, the legislature repealed the EDTPA; the new legislation stated that EDTPA was repealed and that "[t]his act shall take effect immediately" (L 2021, ch 96, §§ 1-2). Plaintiff argues that the repeal of the EDTPA was retroactive, and therefore, that defendant is not shielded from liability for actions that occurred while the EDTPA was still in effect. We disagree.
Where legislation, "if applied to past conduct, would impact substantive rights and have retroactive effect, the presumption against retroactivity is triggered" (Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d 332, 370 [2020]). Given this presumption, "[i]t takes a clear expression of the legislative purpose . . . to justify a retroactive application of a statute" (id. [internal quotation marks omitted]). Requiring a clear expression of purpose "assures that [the legislative body] itself has affirmatively considered the potential unfairness of retroactive application and determined [*2]that it is an acceptable price to pay for the countervailing benefits" (id. [internal quotation marks omitted]; see Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]. Although there is "no requirement that particular words be used . . . the expression of intent must be sufficient to show that the legislature contemplated the retroactive impact on substantive rights and intended that extraordinary result" (Matter of Regina Metro., 35 NY3d at 370-371).
The language of the statute itself does not evince an intent to make the repeal retroactive. Indeed, the statutory text repealing the EDTPA uses no retroactivity language, in contrast to the enactment of the EDTPA, which did use such language (L 2021 ch 96, § 2; L 2020 ch 56, part GGG, § 2; see Majewski, 91 NY2d at 583 [the "clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation"]; see also Gottwald v Sebert, 40 NY3d 240, 258 [2023]).
Other factors to consider when deciding whether a statute is retroactive include whether the legislature "conveyed a sense of urgency," the "statute was designed to rewrite an unintended judicial interpretation," and "the enactment itself reaffirms a legislative judgment about what the law in question should be" (Matter of Gleason [Michael Vee, Ltd.], 96 NY2d 117, 122 [2001]). These factors applied here do not show retroactive intent. Plaintiff does not argue that the repeal rewrote "an unintended judicial interpretation." Nor did the repeal "reaffirm[] a legislative judgment," as the legislature terminated the previous year's grant of immunity (id. at 122). Furthermore, although "the fact that a statute is to take effect immediately" does evince a sense of urgency, the Court of Appeals has found that for purposes of determining retroactive application, the meaning of the phrase "take effect immediately" is "equivocal" (Majewski, 91 NY2d at 583-584 [internal quotation marks omitted]; see also Gottwald, 40 NY3d at 259).
Contrary to plaintiff's assertion, classification of the statute as remedial does not automatically overcome the strong presumption of prospectivity, as the term "remedial" may "broadly encompass any attempt to supply some defect or abridge some superfluity in the former law" (Majewski, 91 NY2d at 584 [internal quotation marks omitted]).
Although "legislative history may also be considered as an aid to interpretation," the legislative history here does not support plaintiff's position (Matter of Regina Metro., 35 NY3d at 352). The sponsors' memoranda in support "do not directly address the issue of retroactivity" (Whitehead v Pine Haven Operating LLC, 222 AD3d 104 [3d Dept 2023]; see Assembly Mem in Support, Bill Jacket, L 2021, ch 96; Senate Introducer's Mem in Support of 2021 NY Senate Bill S5177, enacted as L 2021, ch 96). Thus, the memoranda are, "at best, inconclusive" (Ruth v Elderwood at Amherst, 209 AD3d 1281, 1288 [4th Dept 2022] [internal quotation marks omitted[*3]]). The floor debates also do not demonstrate retroactive intent (see Majewski, 91 NY2d at 586 [legislators' statements during debates "may be accorded some weight in the absence of more definitive manifestations of legislative purpose"]). In the Assembly, the bill sponsor conceded that the bill contained no express retroactivity language and the issue would ultimately be left to the courts, while all other members addressing the issue expressed the understanding, "intent, expectation or hope" that the repeal was prospective only (Whitehead, 222 AD3d 104, *3; see NY Assembly Debate on Assembly Bill 3397, Mar. 4, 2021 at 45-93). The sponsor's affidavit submitted in an unrelated federal action does not prove retroactive intent of the legislature (see People v Whidden, 51 NY2d 457, 462 [1980]). Similarly, the Senate debate included only one statement expressing the understanding that the repeal would be prospective (see NY Senate Debate on Senate Bill S5177, Mar. 24, 2021 at 1834-1836; see also Whitehead, 222 AD3d 104, *2-3; Ruth, 209 AD3d at 1289-1290).
As to the application of the EDTPA, defendant was entitled to immunity under that statute. The documents submitted with defendant's motion to dismiss, including several pandemic-related policies, State Department of Health directives, and more than 1600 of pages of the decedent's medical records, demonstrate that defendant was providing health care services to the decedent under the COVID-19 emergency orders when he was infected and, before that, "in accordance with applicable law"; the care provided was "impacted by" defendant's "decisions or activities in response to or as a result of the COVID-19 outbreak and in support of the state's directives"; and the decedent was provided care "in good faith" (Public Health Law former § 3082[a][1]-[3]; see CPLR 3211[a][1]).
As for plaintiff's claim asserting gross negligence, for which EDTPA immunity does not apply, defendant proved a defense as a matter of law (CPLR 3211[a][1]). The pandemic-related policies and the decedent's medical records negate the allegations that defendant engaged in gross negligence because it took no preparatory steps to prevent infections. Similarly, the proffered Department of Health policy requiring nursing homes to admit or readmit residents who were COVID-positive negates the allegation that defendant was grossly negligent by admitting infected residents (see Colnaghi, U.S.A. v Jewelers Protection Servs., 81 NY2d 821, 823-824 [1993]; S.A. De Obras y Servicios, COPASA v Bank of Nova Scotia, 170 AD3d 468, 472 [1st Dept 2019]). Further, the allegation that defendant was cited nine times from September 2016 through December 12, 2019, "including for failing to maintain an[d] implement an infection control program," is insufficient to support a gross negligence claim, as the same policies and medical records show implementation of at least some policies directed toward preventing the spread of disease before the decedent's infection[*4].
We have considered plaintiff's remaining contentions and find them unavailing.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 13, 2024